1
2
3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

4    UNITED STATES OF AMERICA,                    )

5              Plaintiff,                         )

6    vs.                                          )    No. 12 CR 500

7    DANIEL DVORKIN,                              )    Chicago, Illinois
                                                  )    August 1, 2013
8              Defendant.                         )    1:00 o'clock p.m.

9

10                    TRANSCRIPT OF PROCEEDINGS
                         PRE-TRIAL CONFERENCE
             BEFORE THE HONORABLE EDMOND E. CHANG

11

12   APPEARANCES:

13

14   For the Plaintiff:        UNITED STATES ATTORNEY'S OFFICE
                               MS. HEATHER McSHAIN
15                             MR. JEFFREY PERCONTE
                               219 South Dearborn Street
16                             Chicago, Illinois 60604
                               312-353-5300
17                             heather.mcshain@usdoj.gov
                               jeffrey.perconte@usdoj.gov
18

19   For the Defendant:        FRANKEL & COHEN
                               MR. SCOTT JAY FRANKEL
20                             53 West Jackson Boulevard
                               Chicago, Illinois 60604
21                             312-759-9600
                               frankelandcohen@aol.com
22
                               STACK & O'CONNOR CHARTERED
23                             MR. MARK W. WALLIN
                               140 South Dearborn Street
24                             Chicago, Illinois 60603
                               312-782-0690
25                             mwallin@stacklaw.com

1    Court Reporter:          FEDERAL OFFICIAL COURT REPORTER
                              MS. KRISTA BURGESON
2                             219 South Dearborn Street
                              Chicago, Illinois 60604
3                             312-435-5567
                              krista_burgeson@ilnd.uscourts.gov
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|  | 1 | THE REPORTER:  All rise. |
|---|---|---|
| 01:06:47 | 2 | Case Number 12 CR 00500, USA versus Dvorkin. |
| 01:06:56 | 3 | THE COURT:  You may be seated. |
| 01:08:17 | 4 | You can stay at the tables, as long as you keep your |
| 01:08:20 | 5 | voices up nice and loud. |
| 01:08:21 | 6 | If I can have appearances for the record, please. |
| 01:08:23 | 7 | MS. MCSHAIN:  Heather McShain and Jeff Perconte for |
| 01:08:27 | 8 | the United States. |
| 01:08:27 | 9 | MR. FRANKEL:  Scott Frankel and Mark Wallin on behalf |
| 01:08:34 | 10 | of the defendant, Judge; and Mr. Dvorkin, the defendant, is |
| 01:08:34 | 11 | also present in court. |
| 01:08:35 | 12 | THE COURT:  Good afternoon, everyone. |
| 01:08:38 | 13 | Let me just bring up my files on this. |
| 01:08:44 | 14 | As I do that, unless you have a different agenda, my |
| 01:08:47 | 15 | intent was to first go through the motions in limine unless |
| 01:08:50 | 16 | you had a different agenda, then talk a little bit about the |
| 01:08:54 | 17 | voir dire, really just one particular question that you both |
| 01:08:58 | 18 | had proposed, and then just a very general discussion about |
| 01:09:07 | 19 | the jury instructions. |
| 01:09:08 | 20 | So we will start with the motions in limine. |
| 01:09:15 | 21 | So the first one, at least the first one to hit the |
| 01:09:20 | 22 | docket for the defense side, was the docket entry 54.  It is a |
| 01:09:25 | 23 | two-part motion.  The first part seeks to exclude evidence |
| 01:09:32 | 24 | that this other person, which is labeled A, or B, and |
| 01:09:42 | 25 | solicited by the parties A, or B, by the parties, was the one |

01:09:50 1  solicited instead of the cooperating witness.

01:09:52 2          MR. FRANKEL:  There is no remaining dispute on that

01:10:03 3  particular motion, because the Government will not introduce

01:10:05 4  that evidence.

01:10:07 5          THE COURT:  Here is my question on that:

01:10:10 6          The response was, I guess, capable of being

01:10:20 7  interpreted one way, which I thought might still be an issue.

01:10:23 8          Let me just ask the Government, and maybe there is no

01:10:25 9  issue, and that would be great.

01:10:28 10         Does the government intend to propose to the jury as

01:10:33 11 a separate basis for liability on the 373 count the references

01:10:46 12 to some other person and not just the cooperating witness, who

01:11:00 13 is Mr. Bevis?

01:11:02 14         So, in other words, the way I read defendant's motion

01:11:05 15 was, Hey, there is this guy.  We can call him individual

01:11:11 16 whatever you want to call him.  It turns out, though, that the

01:11:14 17 Government got no evidence that this individual, call him

01:11:18 18 Individual B, had any communications with the defendant about

01:11:25 19 anything like a solicitation.

01:11:29 20         And then the Government's response is, We are not

01:11:33 21 going to introduce any kind of speculative evidence.  So it

01:11:36 22 sounds like they are not going to introduce any evidence or

01:11:39 23 find the defendant guilty based on whoever this Individual B

01:11:43 24 was, who apparently was followed or interviewed by the FBI.

01:11:47 25         Now, there are references in the recordings that the

01:11:53 1 defendant was allegedly in contact with some other person,

01:11:57 2 okay. And so even if the Government is not going to offer

01:12:05 3 particular proof as to who this other person was, is it the

01:12:09 4 Government's intent to ask the jury, or propose to the jury,

01:12:15 5 that that other person, whoever he is, could be the basis for

01:12:22 6 a finding of guilt on the 373 count?

01:12:26 7 MR. PERCONTE: Judge, I think -- as it is charged, I

01:12:29 8 think that would be an acceptable theory. I don't think that

01:12:32 9 is the theory we are going to pursue at trial.

01:12:34 10 The indictment alleges that the defendant solicited

01:12:38 11 another person during this time period. The identity of the

01:12:40 12 person isn't necessarily relevant as defendant's solicitation

01:12:46 13 of that person.

01:12:46 14 However, we view the evidence more as this initial

01:12:50 15 approach of Mr. Bevis.

01:12:51 16 There is continuing discussions with the CW and the

01:12:55 17 defendant regarding how, you know, this will possibly play

01:13:00 18 out, but that the evidence is more in how I think we intend to

01:13:06 19 argue it is, I think in order to prove this charge, we have to

01:13:09 20 show that when he made the solicitation. When he was trying

01:13:11 21 to encourage someone to get involved with this, he was serious

01:13:15 22 about it.

01:13:15 23 And the fact that he is puffing or actually has

01:13:20 24 obtained somebody else to do this, as he claims in his own

01:13:24 25 statements, is relevant to the seriousness of his solicitation

| | |
|---|---|
| 01:13:29 | 1 |
| 01:13:32 | 2 |
| 01:13:35 | 3 |
| 01:13:38 | 4 |
| 01:13:42 | 5 |
| 01:13:46 | 6 |
| 01:13:50 | 7 |
| 01:13:56 | 8 |
| 01:13:58 | 9 |
| 01:14:04 | 10 |
| 01:14:04 | 11 |
| 01:14:06 | 12 |
| 01:14:11 | 13 |
| 01:14:19 | 14 |
| 01:14:23 | 15 |
| 01:14:25 | 16 |
| 01:14:28 | 17 |
| 01:14:31 | 18 |
| 01:14:31 | 19 |
| 01:14:34 | 20 |
| 01:14:38 | 21 |
| 01:14:38 | 22 |
| 01:14:43 | 23 |
| 01:14:45 | 24 |
| 01:14:50 | 25 |

of the CW during that entire timeframe.

So I think that is more what we are driving at.

I do think that it is viable legally. I don't think that is what we intend to argue at trial. We intend to focus more on there is an initial contact with the CW, continuing contact through this period where he is essentially, we will argue, encouraging the CW to come down in price. And as he is doing that, he is saying, yes, he had somebody else to do it. So that is corroborative of his intent, which is an element of the offence.

THE COURT: So are you ready to fish or cut bait as to whether you will be proposing only Mr. Bevis as the solicitee if you -- because I am not sure it is a viable independent theory as charged. It might be that you have to charge it in two separate counts.

So I think we kind of need to know in order --

MR. PERCONTE: We will cut bait on it, Judge.

THE COURT: Okay.

MR. PERCONTE: I understand that the response can be read that way, and I certainly think we left that open in our response.

I don't think we are going to pursue that. I think -- we do think it is a direct element of the offense, but not a 404(b) issue with intent, because we have to show that strongly corroborative aspect of the solicitation and it is

| | | |
|---|---|---|
| 01:14:53 | 1 | throughout the charged period. |
| 01:14:55 | 2 | So I think that is how we intend to use the evidence. |
| 01:14:57 | 3 | So I agree with Mr. Frankel that we are not going to have a |
| 01:15:00 | 4 | witness get up and say, When Mr. Dvorkin was making these |
| 01:15:04 | 5 | statements indicating that he had another person, that was |
| 01:15:07 | 6 | this specific person, and we followed that person around and |
| 01:15:11 | 7 | they met.  I don't see us getting into that. |
| 01:15:13 | 8 | We more will focus on his own statements, show his |
| 01:15:16 | 9 | seriousness regarding his contact and encouragement of the CW |
| 01:15:20 | 10 | to get involved in this event. |
| 01:15:22 | 11 | THE COURT:  On that understanding, the motion is |
| 01:15:24 | 12 | granted, including the massage parlor part, too, of it. |
| 01:15:30 | 13 | But to just put this in as stark terms as possible, |
| 01:15:35 | 14 | so we are not scrambling as trial approaches to try to figure |
| 01:15:41 | 15 | out what is the correct unit of prosecution, I will tell you |
| 01:15:44 | 16 | right now I intend, then, to put in the jury instruction |
| 01:15:48 | 17 | directly on the 373 count that the element of the crime as to |
| 01:15:54 | 18 | the solicitation is that the defendant solicited Mr. Bevis, |
| 01:16:00 | 19 | okay? |
| 01:16:01 | 20 | So I will just make it really clear like that.  There |
| 01:16:05 | 21 | is no mistaking that he is the solicitee. |
| 01:16:09 | 22 | MR. PERCONTE:  That is fine, Judge. |
| 01:16:10 | 23 | THE COURT:  Okay. |
| 01:16:12 | 24 | Next, docket entry 55 is the defendant's motion to |
| 01:16:16 | 25 | introduce evidence of a couple of different pieces of |

| | |
|---|---|
| 01:16:24 | 1 |
| 01:16:36 | 2 |
| 01:16:38 | 3 |
| 01:16:40 | 4 |
| 01:16:45 | 5 |
| 01:16:50 | 6 |
| 01:16:54 | 7 |
| 01:17:00 | 8 |
| 01:17:04 | 9 |
| 01:17:09 | 10 |
| 01:17:14 | 11 |
| 01:17:17 | 12 |
| 01:17:21 | 13 |
| 01:17:26 | 14 |
| 01:17:29 | 15 |
| 01:17:32 | 16 |
| 01:17:36 | 17 |
| 01:17:42 | 18 |
| 01:17:48 | 19 |
| 01:17:54 | 20 |
| 01:17:59 | 21 |
| 01:18:02 | 22 |
| 01:18:08 | 23 |
| 01:18:16 | 24 |
| 01:18:26 | 25 |

1 testimony and for a couple of different purposes.  So I have

2 read the filings, made my thoughts, and then it will be clear

3 that I have a question for the defense on that.

4 So the defense cited some cases that discussed what

5 has been categorized as reverse 404(b), but whatever the

6 terminology, because I think that reverse 404(b) means

7 different things to different people, it is the case that Rule

8 404(b), although ordinarily used by the Government, is, of

9 course, also a rule of evidence that is available to the

10 defendant to propose witnesses and evidence.

11 Now the cases that the defendant cited, though, are

12 all cases having to do with pointing the finger at other

13 persons, and so the defendant tries to introduce evidence of

14 criminality as to other individuals who might have committed

15 the crime rather than the defendant.

16 The proper analysis, I think, is instead the line

17 that deals with, as the Government points out in its response,

18 the defendant's attempt to show a character of lawful

19 behavior, of law abidingness character, and that is generally

20 prohibited, because Rule 404(b) generally prohibits the

21 parties from getting into a battle over character.

22 Now, that is -- that is not to say, however, that

23 there may be some permissible 404(b) type evidence that the

24 defendant could introduce, and I will give you an example.

25 We want to introduce the evidence from two

01:18:29  1   individuals, Mr. Early and Mr. Stoller, I believe it is, who

01:18:37  2   has done a lot of business with the defendant, right, and so

01:18:40  3   they are going to attest that he has had his ups and downs in

01:18:46  4   the business world, and he has never resorted to, you know,

01:18:51  5   violence in order to try to erase a financial obligation.

01:18:56  6        Now, stated in those terms, that is a character --

01:19:01  7   that is character evidence.  That is a proposal to introduce

01:19:04  8   evidence of, you know, lawful behavior.

01:19:08  9        Now, what might be admissible, though, is a more

01:19:13  10  specific -- for a more specific purpose would be something

01:19:19  11  like a conversation that Mr. Early or Mr. Stoller had with the

01:19:24  12  defendant, or some other evidence, I suppose it doesn't have

01:19:27  13  to be a conversation, which would show that the defendant

01:19:33  14  specifically knew that the death of a member of an LLC does

01:19:38  15  not erase the debt, nor would it require the vacature of a

01:19:47  16  civil judgment that the LLC had one.

01:19:52  17       So what I mean by that is I think it would be a

01:20:00  18  relevant non-character, non-prohibited purpose for witnesses

01:20:12  19  to testify that based on a conversation or something else,

01:20:20  20  Mr. Dvorkin knew that by calling -- you know, by having a

01:20:31  21  member of an LLC be killed, would not erase this debt.

01:20:42  22       So let me first ask the Government's reaction to

01:20:46  23  evidence that specifically showed that was within Dvorkin's

01:20:50  24  knowledge.  Let me ask the Government first.

01:20:55  25       MR. PERCONTE:  In terms of 404(b)?

THE COURT:  Yes.

MR. PERCONTE:  I am not sure that would fall under Rule 404(b).  I think if there is a witness that could testify regarding his knowledge that he knew that the death would not result in the vacature of that judgment, that would just be relevant knowledge under 401.

THE COURT:  I didn't say that very well.  It probably is not characterized properly as character evidence at all.

So you would not object if either Mr. Early or Mr. Stoller, for example, would say, Yes, we had a conversation on X date, and we talked about how even if someone who is a member of an LLC sold his share to someone, or if he passed away, that debt does not get erased?

MR. PERCONTE:  My first reaction is, what an interesting conversation to have in the context, but there are possible hearsay problems with that, but I don't think --

I mean, if a witness can somehow get up and provide a personal knowledge account that would indicate that the defendant knew this; for example, if the defendant had been in litigation before and it was a deal that involved one of these individuals, and you know the head of an LLC who was the opposing party died and they still had to pay the judgment, then the person could get up and say, I was involved in a case just like this with the defendant and he knew he still had to pay that judgment, even though the principal party on the

01:22:33  1  other side, the head of the LLC, died.

01:22:35  2        That would be, I think, a ground where that person

01:22:38  3  could testify.  They could testify to that act, and the

01:22:42  4  defendant could ask the jury to draw the inference that based

01:22:46  5  on that prior litigation he knew that, you know, if the victim

01:22:54  6  here was killed, the proposed victim was killed, this would

01:22:57  7  not exist.

01:22:58  8        So I think that is possible, but I have concerns

01:23:01  9  about it coming out in the form of a conversation, because

01:23:03  10  that could potentially be hearsay.  I would have to hear what

01:23:06  11  the questions were and what was said.

01:23:08  12        But I do think there is a possibility that a witness,

01:23:12  13  other than the defendant, who, of course, could testify to

01:23:14  14  this himself, but a witness other than the defendant could get

01:23:17  15  it in.

01:23:17  16        I don't think this -- what is being asked to allow

01:23:22  17  them to testify to here, which is, We have been involved in

01:23:24  18  litigation before and he has never sought to kill anybody or

01:23:28  19  mention crimes of violence or violated the law, I don't know

01:23:31  20  if that is really what the defendant is asking to put it in

01:23:36  21  this motion.

01:23:37  22        So, for that reason, I think the Court should deny

01:23:40  23  this particular motion, but I think even denying this motion

01:23:42  24  you would leave open the possibility that the defendant could

01:23:45  25  present some sort of competent evidence regarding his

01:23:48  1   knowledge from another witness.

01:23:50  2        We are not -- we do not think that is foreclosed.  It

01:23:53  3   just needs a proper foundation.  And we would ask the Court to

01:23:55  4   at least require some sort of offer of proof before we do that

01:23:59  5   exercise in front of the jury.

01:24:00  6        THE COURT:  Okay.

01:24:01  7        So here is -- well, let me ask for the defense

01:24:04  8   response then.

01:24:05  9        MR. WALLIN:  Sure, Your Honor.

01:24:07  10       And you put your finger on exactly what we were

01:24:10  11  trying to do.  However inartfully drafted, the idea was to

01:24:14  12  provide both the Government and Your Honor notice of the fact

01:24:16  13  that we are potentially going to put on these witnesses who

01:24:20  14  can testify to specific personal experiences that they had

01:24:23  15  with the defendant.

01:24:24  16       Now, the opinion evidence in there regarding his

01:24:30  17  opinion for truthfulness, yes, it was stated in there, but

01:24:33  18  that was not our intent, and I apologize if that took the

01:24:36  19  defendant -- or, excuse me, took the Government and Court far

01:24:40  20  afield from what our purpose was.

01:24:41  21       But the purpose in our motion, Your Honor, was

01:24:43  22  exactly as you identified:  To put somebody on the stand to

01:24:47  23  testify about an actual experience, an arm's length

01:24:49  24  transaction, with the defendant to say, Yes, I have had

01:24:53  25  business negotiations with Mr. Dvorkin, he is a business savvy

01:24:59    1    person.  Not to testify that he has a character for
01:25:03    2    truthfulness.  That was not our intent in this motion at all.
01:25:07    3           And to address something that the Government brought
01:25:10    4    out, I don't think it would necessarily need to be as specific
01:25:14    5    as a litigation, or a case where Mr. Dvorkin dealt with a
01:25:19    6    member of an LLC who died in order for him to know that the
01:25:23    7    death of a member of an LLC does not extinguish the debt.
01:25:28    8           I think merely -- we can lay this foundation at
01:25:31    9    trial.  I think that it is merely the fact that he has
01:25:35   10    dealings with LLC's, has dealings where people go into debt,
01:25:38   11    he would be able to testify about his opinion whether or not
01:25:40   12    Mr. Dvorkin understands the effect of debt in an LLC.
01:25:44   13           THE COURT:  I think the devil is in the details here,
01:25:48   14    because I think what you have just described there still falls
01:25:58   15    short of what would be necessary to specifically connect to a
01:26:04   16    relevant purpose, rather than a -- rather than evidence from
01:26:19   17    which the jury has to make a leap from, Here is a person, the
01:26:27   18    defendant, who has many years of experience with LLC's, and so
01:26:35   19    then based on that experience, he knows that if a member of
01:26:41   20    the -- of an LLC passes away, the debt is not erased.  Or if
01:26:46   21    the LLC holds a judgment, the judgment is not vacated.
01:26:50   22           I believe you need something more than just X number
01:26:54   23    of years of experience, Y number of transactions.  There has
01:27:00   24    to be something more specific in order to make that
01:27:04   25    connection.

So I understand why you want to propose for non-character purposes, and non-law abiding purposes, but I don't know if -- well, I do know.

That offer of proof that you have just made is insufficient.

If there is something more detailed, you don't have to do it right now, we will set some dates, and you can file something more in writing, because I do think it makes sense to try to flush this out before trial so that your witnesses don't hit the stand and then they testify and then you are about to sit down, and then I am wondering, I don't think you had enough, and so I am going to strike all of that testimony.

So we will set a date where you can make a more specific offer of proof, but I hope you -- are you understanding what my concern is about the specific facts that are necessary?

MR. WALLIN:  Absolutely, Your Honor.

THE COURT:  Okay.

MR. WALLIN:  Part of the problem is, you know, we are in the process of contacting these witnesses, and we haven't been able to thoroughly speak with them yet about these things, but that is our intent.

THE COURT:  Okay.  All right.

So -- and I will set the date a little bit closer to the trial if you need some more time to do that.

| 01:28:29 | 1 | MR. FRANKEL:  Judge, we do plan on bringing in |

MR. FRANKEL:  Judge, we do plan on bringing in
character, basic garden variety character, testimony to talk
about Mr. Dvorkin's reputation in the community for
truthfulness, law abiding behavior, and those kinds of things.

THE COURT:  Law abiding behavior is not a pertinent
character trait, as that term is used under 404(a), so that is
not going to be -- that is not admissible.

Character for truthfulness will be admissible if he
testifies, and then you can bring in your character witnesses
on his reputation for truthfulness.

MR. FRANKEL:  What about peaceful behavior?  I don't
think the defendant has to testify to bringing character
witnesses' testimony regarding the defendant's reputation in
the community for peaceful behavior.

THE COURT:  Under 404(a), it specifically refers to
-- well, it refers to the Government doing that, but it -- it
would also be in a case in which there was self-defense, or
the question of --

MR. FRANKEL:  And not any solicitation of violent
crime.

MR. PERCONTE:  It just seems law abiding by another
name, a synonym.

THE COURT:  Yeah.  The specific contemplation of
peaceful versus aggressive behavior, under the rules, explicit
text at least, in the situation where there is a victim and

01:30:19  1   aggressor, and that is not the situation.

01:30:22  2        Now, if you want to go beyond those explicit textual

01:30:26  3   provisions to argue that peaceful behavior can apply in a

01:30:34  4   solicitation case, where it is not like a one-on-one,

01:30:38  5   mono-e-mono face-off, then you should file another motion on

01:30:44  6   that.

01:30:44  7        MR. FRANKEL:  Okay.

01:30:45  8        THE COURT:  Because that, I don't think, was

01:30:47  9   presented in the motion that has been filed.

01:30:49  10        MR. FRANKEL:  I didn't raise that yet, but I will.

01:30:52  11        THE COURT:  I think you should certainly do that.

01:30:58  12   Okay.

01:31:15  13        Now, the same goes for the other purpose that was

01:31:24  14   stated in the motion, which was the bankruptcy option; and

01:31:33  15   there, again, if there is evidence from business associates

01:31:37  16   that, Yeah, we have discussed bankruptcy as an option before

01:31:42  17   to erase judgments against us, then I think that would be

01:31:47  18   relevant.

01:31:50  19        In other words, the defense, in order to rebut the

01:31:54  20   argument that the defendant had the intent to -- had the

01:32:03  21   intent to hire someone to murder Mr. Meyer, should be able to

01:32:11  22   present, again, specific evidence that the defendant knew that

01:32:15  23   bankruptcy would be an option to either vacate or modify the

01:32:21  24   judgment against him, and that he would not have to resort to

01:32:26  25   hiring someone to murder him.

|       |    |                                                                     |
|-------|----|---------------------------------------------------------------------|
| 01:32:31 | 1  | But, again, that has to be based on more specific              |
| 01:32:34 | 2  | facts than what have been presented so far, and so you need to |
| 01:32:37 | 3  | make that part of a specific offer of proof, as well, for that |
| 01:32:40 | 4  | next filing.                                                   |
| 01:32:41 | 5  | And that also goes for his attorneys, I think the two          |
| 01:32:44 | 6  | attorneys that are listed, if there was a conversation where   |
| 01:32:48 | 7  | one of his attorneys, before the events charged in the case,   |
| 01:32:52 | 8  | could testify to a conversation that says, Yes, Mr. Dvorkin    |
| 01:32:56 | 9  | and I, when he was having financial trouble, we discussed      |
| 01:33:05 | 10 | bankruptcy as a possibility, eliminate it or modify it, then I |
| 01:33:12 | 11 | think that is a relevant, non-character based piece of         |
| 01:33:16 | 12 | evidence that would be admissible.                             |
| 01:33:19 | 13 | But, again, you need something more specific.  You             |
| 01:33:22 | 14 | can't just argue, he has had 20 years of experience in the     |
| 01:33:26 | 15 | business world.  He knows about bankruptcy.  That is too much  |
| 01:33:35 | 16 | of a gap.                                                      |
| 01:33:36 | 17 | MR. PERCONTE:  So, Judge, is it fair to say that the           |
| 01:33:38 | 18 | defendant's motion on the 404(b) and 701 is denied with        |
| 01:33:43 | 19 | prejudice for a continuing potential offer of proof?           |
| 01:33:48 | 20 | THE COURT:  Yes.                                               |
| 01:33:49 | 21 | As presently presented, it is denied, but it is               |
| 01:33:52 | 22 | without prejudice for these specific offers of proof.          |
| 01:34:02 | 23 | All right.  The next defense motion is 56, and it is           |
| 01:34:05 | 24 | a motion that is styled under Rule 404(b) in which the defense |
| 01:34:10 | 25 | wishes to present evidence against the cooperating witness,    |

| | | |
|---|---|---|
| 01:34:14 | 1 | Mr. Bevis. |
| 01:34:15 | 2 | Is it Bevis or Bevis? |
| 01:34:18 | 3 | MR. PERCONTE:  I think it is Bevis. |
| 01:34:20 | 4 | THE COURT:  Okay. |
| 01:34:24 | 5 | So the way the motion is written speaks of trying to |
| 01:34:28 | 6 | introduce as evidence modus operandi of Mr. Bevis' dishonesty. |
| 01:34:37 | 7 | I don't believe 404(b) permits that type of evidence, |
| 01:34:45 | 8 | both as a matter of law and as a factual matter here. |
| 01:34:48 | 9 | As a matter of law, character evidence of -- or |
| 01:34:52 | 10 | evidence of untruthfulness necessarily goes under Rule 608 and |
| 01:34:57 | 11 | Rule 609.  And so offering all of these additional specific |
| 01:35:03 | 12 | instances of untruthfulness necessarily fits under different |
| 01:35:07 | 13 | rules, and not under Rule 404. |
| 01:35:11 | 14 | And then as a factual matter, even if somehow in a |
| 01:35:16 | 15 | particular case one can argue that modus operandi can extend |
| 01:35:22 | 16 | to dishonesty, despite the fact there are more specific rules |
| 01:35:27 | 17 | that govern credibility attacks, this isn't that case. |
| 01:35:32 | 18 | There are specific instances of misconduct if the |
| 01:35:36 | 19 | defense wants to introduce, but it is not the kind of modus |
| 01:35:40 | 20 | operandi evidence that is -- that establishes so well a |
| 01:35:46 | 21 | pattern that it is as if Mr. Bevis is a walking lie. |
| 01:35:57 | 22 | In addition to that, I would have, you know, very |
| 01:36:00 | 23 | serious 403 concerns about trying to prove up each piece of |
| 01:36:05 | 24 | this, each specific instance of misconduct. |
| 01:36:13 | 25 | So the motion as styled under 404(b), that is denied. |

01:36:21   1          Now, under 608, though, you might be able to ask some
01:36:25   2   questions about, you know, these specific instances of
01:36:27   3   misconduct.  So this is how, as you probably know, Rule 404(b)
01:36:34   4   differs from Rule 608.
01:36:35   5          Under Rule 404 you would have been able to introduce
01:36:38   6   all sorts of extrinsic evidence about specific instances of
01:36:44   7   misconduct.  You can't do that.  But under Rule 608 perhaps
01:36:47   8   you can ask about some of them, and then you will just have to
01:36:50   9   take the answer as are given without introducing extrinsic
01:36:53  10   evidence.
01:36:54  11          Now, Rule 403 still applies, though, so it is worth
01:36:59  12   looking at what you have proposed, at least on a category by
01:37:03  13   category basis.  Okay.
01:37:06  14          Now --
01:37:09  15          So my first question:
01:37:10  16          There is this Illinois Secretary of State Office
01:37:14  17   finding of September 8, 2010.  Actually, no.  It is not a
01:37:21  18   finding.  It is a notice of hearing, against Mr. Bevis for
01:37:24  19   failing to register securities that he then sold.  This is
01:37:32  20   Exhibit A to your motion.
01:37:33  21          So my first question is:
01:37:35  22          Do you know what the underlying facts are that
01:37:38  23   generated that notice of hearing?
01:37:41  24          MR. PERCONTE:  Your Honor, somebody complained to the
01:37:43  25   Secretary of State's Office, I can guess who it is, it is the

01:37:48  1   plaintiff in the later cases that we appended to our motion,

01:37:56  2   that Mr. Bevis had sold him some fraudulent stock, a supposed

01:38:01  3   company of Mr. Bevis', the stock was unregistered with the

01:38:05  4   State of Illinois, and that is why the notice went out.

01:38:10  5            THE COURT:  So the notice standing alone is not

01:38:13  6   admissible, and then it doesn't sound like you have enough of

01:38:17  7   a basis -- we will talk about the other lawsuits in a minute,

01:38:22  8   but just on this notice of hearing, to question Mr. Bevis -- I

01:38:29  9   am not even sure how you would formulate a question without

01:38:32  10  using the notice of hearing, which you can't, because it is

01:38:35  11  extrinsic evidence.

01:38:38  12           So, to sort of be clear, that notice of hearing is

01:38:41  13  excluded, and -- unless you can formulate a line of

01:38:46  14  questioning on the specific instance of misconduct that

01:38:50  15  underlies, I don't think you can ask questions about it

01:38:56  16  either.

01:38:57  17           Now, there is an April 11, 2011 -- this is the

01:39:01  18  finding and order by the Secretary of State.  And so for this

01:39:05  19  one, do you know what generated this finding?

01:39:09  20           MR. FRANKEL:  It is all around the same circumstances

01:39:12  21  of this company that he tried to sell to people called Tooth

01:39:19  22  Bright, in which he claimed to have a special toothbrush that

01:39:26  23  would kill bacteria in your mouth.

01:39:29  24           He went to his friends, basically, people he had met

01:39:32  25  through his activities as a baseball coach, and told them that

01:39:36    1    he could sell them stock in this company.  Of course, the

01:39:39    2    stock was never registered, and it was just pieces of paper

01:39:42    3    that he had created.

01:39:43    4            So he received this sanction from the State of

01:39:46    5    Illinois for improperly -- he was permanently banned from

01:39:53    6    selling securities in the State of Illinois.

01:39:56    7            THE COURT:  So what is the Government's response to

01:40:01    8    the argument that the defense ought to be able to ask specific

01:40:05    9    questions to the effect of, you know, isn't it true that in --

01:40:18   10    and I am going to make up dates -- March 2010, you sold

01:40:34   11    $130,000 worth of stock to -- I am making up numbers too --

01:40:41   12    this individual and, in fact, there was no such stock?

01:40:50   13            MR. PERCONTE:  I am not sure that that is -- first, I

01:40:55   14    think the judgment that they are referencing here is based on

01:40:58   15    a default.  He just didn't respond to the complaint.

01:41:01   16            I think the underlying -- I think what the complaint

01:41:05   17    is is that he sold unregistered securities, right, and so

01:41:09   18    whether he -- I don't know if that -- I don't believe that is

01:41:13   19    relevant to truthfulness or untruthfulness.

01:41:16   20            He sold shares to a company -- of a company that he

01:41:20   21    apparently failed to sell registered securities.  Maybe he

01:41:27   22    just didn't know they needed to be registered.  I am not sure.

01:41:30   23            So I am not sure if that question is probative of his

01:41:34   24    truthfulness, and I guess that is my main concern.  So you

01:41:37   25    sold shares of stock that wasn't registered?  I am assuming he

01:41:44  1    would answer yes.  I have not talked to him about that, but I
01:41:48  2    am not sure -- I know it is being characterized as fraudulent,
01:41:51  3    and I understand it is their theory, but I don't know --
01:41:55  4             What we have here in front of us, and my
01:41:58  5    understanding, is that he sold shares to a person and those
01:42:02  6    shares were not registered and didn't go anywhere and he got
01:42:09  7    sued for it later.  But I am not sure if that is relevant to
01:42:12  8    his truthfulness.  It is kind of similar to an unpaid debt in
01:42:15  9    my mind.
01:42:16  10            THE COURT:  That is why I tried to formulate the
01:42:18  11   question, not very well, I guess, but that had nothing to do
01:42:21  12   with registered or not, but that there was no such stock, it
01:42:24  13   didn't exist.
01:42:29  14            MR. PERCONTE:  I mean, he can be asked that question,
01:42:31  15   I don't know if there is a good faith basis for it; but if he
01:42:35  16   has a good faith basis for the question, he is going to have
01:42:39  17   to accept the answer, but I don't --
01:42:45  18            THE COURT:  I think the exhibits -- you have the
01:42:47  19   finding of the Secretary of State barring him from selling
01:42:51  20   securities, and it did mention he is in default, but that
01:42:55  21   gives some basis to question Mr. Bevis of his sale of these
01:43:08  22   shares.
01:43:08  23            And then I guess I am also assuming that is connected
01:43:11  24   to the 2012 complaint in DuPage County Circuit Court in which
01:43:17  25   the plaintiff alleges outright fraud, that he is selling --

01:43:22  1    that Mr. Bevis was selling nonexistent stock.

01:43:26  2            So we wouldn't get into all this thing about

01:43:29  3    unregistered or registered, but that, as Mr. Frankel was

01:43:32  4    saying, they are just pieces of paper.  I think they probably

01:43:36  5    even get to ask him if there was a company.  I mean, was it

01:43:40  6    incorporated?

01:43:40  7            Do you know, Mr. Frankel?

01:43:42  8            MR. FRANKEL:  I don't know if it ever was

01:43:45  9    incorporated, Your Honor.

01:43:47  10           THE COURT:  If you were to look it up on the

01:43:49  11   Secretary of State website or Westlaw, maybe this company was

01:43:52  12   never even created.

01:43:54  13           MR. PERCONTE:  Judge, I guess I don't have a problem.

01:43:56  14   Here is what I don't want the questions to be:

01:43:58  15           You were sued by the Illinois Securities Commission,

01:44:02  16   they made a finding against you.  That, I don't think, is

01:44:05  17   appropriate.

01:44:06  18           But if he wants to ask him, Did you have a company

01:44:09  19   named Tooth Bright, Did you sell shares of that company that

01:44:12  20   didn't exist, Did you sell them to this person, look, I think

01:44:17  21   that it is not -- we would not fight those questions.  I would

01:44:23  22   argue that they are not really that relevant to truthfulness

01:44:27  23   or probative, but I don't think it is worth keeping them out

01:44:32  24   for somebody to later decide they were.

01:44:34  25           So if he wants to ask those questions, as long as he

01:44:38  1   accepts those answers, that is fine.

01:44:39  2           I think what we are mainly concerned about is, Well,
01:44:43  3   then you were sued by this person.  Okay.  Well, that is a
01:44:46  4   problem.  The existence of these lawsuits, the existence of
01:44:51  5   these, or a hearing where he was asked questions about
01:44:54  6   somebody's planting drugs on somebody's wife or something,
01:44:59  7   that is more what I am concerned about.  I don't want this to
01:45:02  8   be overly smoked in through just essentially asking questions,
01:45:07  9   do these documents exist.

01:45:08  10          But in terms of your underlying question that you
01:45:11  11  asked us to talk about, did you sell shares in this company,
01:45:14  12  did those shares exist, did the company exist, we are not
01:45:18  13  going to object to those, as long as, you know, the answers
01:45:22  14  are being accepted.

01:45:23  15          And we are not trying to get into, you know, if he
01:45:27  16  says, No, I didn't sell shares, Well, you were sued for that,
01:45:31  17  sir.  That, I think, would be objectionable.

01:45:33  18          But in terms of the underlying existence of the
01:45:36  19  company, you know, and the sale of stock, and whether he did
01:45:43  20  it, and who he sold it to, I think we would not object to him
01:45:48  21  inquiring on that.

01:45:49  22          But if the follow-up to that, he says, No, I didn't,
01:45:53  23  and, Sir, weren't you sued on that, okay, that is where I
01:45:57  24  think we have to draw the line, because that is potentially
01:45:59  25  smoking extrinsic evidence that is otherwise not disclosed.

01:46:03    1      THE COURT:  Response?

01:46:04    2      MR. FRANKEL:  I am not sure I understand the

01:46:07    3 parameters.

01:46:08    4      I mean, if I am cross-examining him about his

01:46:17    5 dealings in connection with this transaction, I am not sure I

01:46:20    6 understand why -- where the line would be drawn.

01:46:23    7      I think I need to -- if I am going to be allowed to

01:46:27    8 do it, I think I need to know pretty clearly which questions I

01:46:30    9 will be able to get into.

01:46:31   10      I do think that questions about the lawsuit are

01:46:34   11 relevant because it shows that -- it shows that the person who

01:46:44   12 was victimized by these lies brought a lawsuit against him to

01:46:49   13 vindicate what had happened.

01:46:50   14      And even though you can't -- I understand under that

01:46:53   15 rule you can't bring in the lawsuit itself, to show a lawsuit

01:46:57   16 was brought, those are questions that still, I think, fall

01:47:00   17 under the broad scope of cross-examination, to flush out

01:47:04   18 exactly what happened here.

01:47:05   19      The man, in our view, he is a complete fraud, a

01:47:09   20 complete con man, and a liar, and that is what the case is

01:47:12   21 based on, his testimony, and that is why we -- we just want to

01:47:17   22 be able to bring out as much of that as we have been able to

01:47:20   23 discover through our investigation.

01:47:22   24      MR. PERCONTE:  Judge --

01:47:23   25      THE COURT:  That is okay.

01:47:24    1          The credibility of Mr. Bevis is obviously a paramount

01:47:29    2    issue in the case, so the purpose is fine.

01:47:31    3          It is the matter in technique and the rules.  And the

01:47:34    4    rules say that under 608, if you are going to try to get in

01:47:39    5    specific instances of conduct that go to truthfulness or

01:47:43    6    untruthfulness, you cannot introduce extrinsic evidence.

01:47:47    7          And by asking questions about a lawsuit or a

01:47:53    8    Secretary of State finding, that is a way of introducing

01:47:56    9    extrinsic evidence through the witness himself.

01:48:02   10          So it basically tucks into the -- tucks into the

01:48:07   11    question of extrinsic evidence, and that is barred under 608.

01:48:10   12          If you think about this, it is not a lot of comfort

01:48:14   13    for you, I am sure, but this is -- there is a compromise here

01:48:17   14    that the rules made between the general principle that someone

01:48:22   15    has lied before, and it goes to his, you know, character for

01:48:27   16    truthfulness.

01:48:28   17          We don't usually have battles over people's

01:48:34   18    character, whether it is the parties or witnesses.  And so

01:48:37   19    generally you can't get into that at all.  And, of course,

01:48:40   20    there is a concern about having mini trials over a previous

01:48:45   21    instance of untruthfulness.

01:48:48   22          But the balance that Rule 608 struck was if you have

01:48:52   23    got some strong evidence of a specific instance of

01:48:55   24    untruthfulness, you can ask questions about it.  And, you

01:49:00   25    know, from your perspective, you hope he tells the truth and

01:49:03    1    he admits it, he might have a different perspective on whether

01:49:07    2    he really lied on that prior occasion, but then you are stuck

01:49:10    3    with the answer.

01:49:11    4         So maybe he will admit that he had not incorporated

01:49:15    5    his company, and there was really no stock; but if he doesn't,

01:49:20    6    then you are stuck with the answer, and you can't inquire in

01:49:25    7    order to elicit from him extrinsic evidence on lawsuits being

01:49:30    8    filed, or even the Secretary of State finding, that that would

01:49:35    9    be extrinsic evidence.

01:49:37    10         So that is the -- those are the parameters that the

01:49:42    11    rules provide, and so the questions have to be specific as to

01:49:46    12    his conduct and not the conduct of others or the Secretary of

01:49:57    13    State.

01:49:57    14         MR. FRANKEL:  Judge, just one question for

01:49:59    15    clarification.

01:50:00    16         We did add in there past due rent notices.  I assume

01:50:04    17    we could ask about that just under bias and --

01:50:07    18         THE COURT:  That is a different -- we can skip ahead

01:50:13    19    to that if you like.

01:50:14    20         The Exhibit I, past due rent statements, so there, if

01:50:24    21    -- it is not even a -- I don't think you were trying to get

01:50:29    22    that in for character for truthfulness, so it is not a 608

01:50:33    23    issue.

01:50:33    24         That actually is, I think, maybe the one point in the

01:50:37    25    motion, which is properly described as a Rule 404 instance

01:50:44  1  where he, Mr. Bevis, is alleged to not have paid rent, but

01:50:50  2  there is a bias that he has, therefore, against Mr. Dvorkin.

01:50:55  3  It may not be the greatest argument, but I do think it is

01:51:00  4  relevant, and it is not a character for truthfulness issue

01:51:05  5  that if Mr. Bevis owed money to Mr. Dvorkin.

01:51:09  6          Now, I should ask this:

01:51:12  7          Was this around the time of the --

01:51:14  8          MR. FRANKEL:  Yes.

01:51:16  9          THE COURT:  Okay.  Let's see.

01:51:25  10         Yes, it is right around the time.

01:51:27  11         MR. PERCONTE:  One of the months is after, I think,

01:51:28  12 in the statement, Judge, I think.

01:51:30  13         MS. MCSHAIN:  It is May, June, July.

01:51:32  14         MR. PERCONTE:  I think it is May, June, and July, and

01:51:34  15 the arrest was in early May.

01:51:36  16         MR. WALLIN:  Arrest was in July, I believe.

01:51:39  17         MR. PERCONTE:  He was approached May 4th, I think.

01:51:42  18         MR. WALLIN:  April 5th is when he received the call

01:51:44  19 from Mr. Dvorkin, and April 6th was --

01:51:47  20         MR. PERCONTE:  By the FBI, I'm sorry.

01:51:49  21         He was approached by the FBI, I believe, on May 7th,

01:51:53  22 Mr. Dvorkin was.  That is when -- so the idea that -- and I

01:51:58  23 believe the initial approach by the CW of Mr. Dvorkin happened

01:52:09  24 in April, which is before this rent --

01:52:09  25         THE COURT:  Wait.  Yeah.  So Mr. Bevis went to the

01:52:11  1    FBI in early April.

01:52:14  2             Right?

01:52:14  3             MS. MCSHAIN:  Yes.

01:52:15  4             MR. PERCONTE:  April 4th was the alleged first

01:52:17  5    meeting, is the beginning of the charge, and it is also the

01:52:19  6    first meeting, and it's when Mr. Bevis went to the FBI.  This

01:52:26  7    statement involves May, June, and July.

01:52:28  8             Now, Mr. Dvorkin was arrested in July, but by that

01:52:31  9    point Mr. Bevis had already -- you know, the approach and

01:52:35  10   recordings happened mainly in April, and then there were some

01:52:38  11   in early May.

01:52:38  12            MR. FRANKEL:  Judge, I think if he -- if he is not

01:52:43  13   paying his rent, it still shows motive to lie against

01:52:48  14   Mr. Dvorkin.  The investigation is occurring at the same time

01:52:53  15   that he is not paying the rent.

01:52:56  16            So the allegations he is making about Mr. Dvorkin,

01:53:00  17   and in particular the allegations that he made about the first

01:53:04  18   phone conversation, those allegations were made at the same

01:53:08  19   time he is not paying his rent.  So it goes directly to his

01:53:12  20   bias for making up these allegations.

01:53:14  21            MR. WALLIN:  And, Your Honor, the reports say that on

01:53:16  22   the 5th, when he received the first phone call from

01:53:19  23   Mr. Dvorkin, allegedly he thought it was because of his past

01:53:23  24   due rent.

01:53:29  25            THE COURT:  So, aside from these invoices, did he

| | |
|---|---|
| 01:53:32 | 1 |

fail to pay rent on time before May of 2012?

01:53:37  2          MR. WALLIN:  April of 2012.

01:53:39  3          THE COURT:  Okay.  It is maybe not the strongest

01:53:48  4   argument, and I look forward to hearing you argument -- argue

01:53:51  5   it to the jury and how exactly you are going to describe it to

01:53:54  6   the jury, but I do think that it has some tendency to show

01:54:02  7   that Mr. Bevis might have some motive to, you know,

01:54:07  8   misdescribe what is happening with Mr. Dvorkin if Mr. Bevis

01:54:16  9   owes money to him.

01:54:17  10         So I will allow permit questions about past due rent.

01:54:21  11         MR. PERCONTE:  And, Judge, I think because it is

01:54:23  12  bias, they would be able to introduce extrinsic evidence

01:54:30  13  regarding that.  However, we would object to this being

01:54:31  14  introduced until there is proper foundation as to what this

01:54:33  15  document is.

01:54:34  16         Because, while the defendant is indicating this is a

01:54:37  17  rent statement of past due rent, we would need to know whether

01:54:41  18  it was kept as a business -- regular course of business

01:54:44  19  activities, who generated the document, when it was generated,

01:54:49  20  for some foundation that this is actually what the defendant

01:54:52  21  says it is.

01:54:52  22         THE COURT:  Well, the first thing that the defense

01:54:54  23  can do is just ask the questions, whether there is an exhibit

01:54:58  24  or not.

01:54:58  25         MR. PERCONTE:  Absolutely, I agree with that.

01:55:00  1          THE COURT:  And then once that has occurred -- I
01:55:03  2   mean, these invoices appear also to be, you know, copies
01:55:05  3   directed to Mr. Bevis, so he might be able to lay the
01:55:08  4   foundation.
01:55:09  5          MR. PERCONTE:  Judge, and I am saying with respect to
01:55:11  6   the other documents that we are going to talk about, as we are
01:55:14  7   going through these exhibits, we think that there are
01:55:16  8   extrinsic evidence that should obviously not come in.
01:55:19  9          This document would arguably be an exception to that,
01:55:19  10  because it is bias, which allows extrinsic evidence.  So, I
01:55:26  11  guess I am saying I am open to the defendant introducing this
01:55:28  12  as extrinsic evidence, as opposed to everything else.
01:55:31  13  However, we would certainly object pending a foundation for
01:55:35  14  it.
01:55:35  15         THE COURT:  So you have reserved a foundation
01:55:38  16  objection to the exhibit?
01:55:39  17         MR. PERCONTE:  Yes.
01:55:40  18         THE COURT:  The line of questioning is permissible.
01:55:46  19         MR. FRANKEL:  I don't know if you are planning on
01:55:48  20  moving on or if you want to address -- there a couple items we
01:55:51  21  didn't specifically address.
01:55:53  22         THE COURT:  Go ahead.
01:55:54  23         MR. FRANKEL:  Okay.
01:55:55  24         So an arrest for cocaine and marijuana in Florida.
01:55:58  25         THE COURT:  This did not result in a conviction.

01:56:00  1          Is that correct?

01:56:01  2          MR. FRANKEL:  Correct.

01:56:01  3          MR. PERCONTE:  And it is from 1986.

01:56:03  4          THE COURT:  Right.

01:56:05  5          Given the age of the arrest and the lack of a

01:56:12  6 connection between possession of cocaine and marijuana, I

01:56:15  7 think was also part of the arrest, lack of connection between

01:56:19  8 that type of possession and truthfulness, I do not think that

01:56:27  9 the defense ought to be able to even inquire, because of

01:56:29  10 the -- for those reasons, lack of connection to character for

01:56:39  11 truthfulness.  So the arrest will not be inquired into.

01:56:42  12          MR. PERCONTE:  Judge, can we just continue to go?

01:56:44  13 I think the Court was going through each of these exhibits

01:56:47  14 and --

01:56:48  15          THE COURT:  Right.

01:56:49  16          All right.  So let's -- then we will back up a little

01:56:52  17 here.

01:56:54  18          Well, there is the overall ruling that the extrinsic

01:56:59  19 evidence is not permitted either by way of inquiry or

01:57:03  20 documents under Rule 608.

01:57:06  21          Now, there was an additional -- right.  So there was

01:57:22  22 a more additional proposal, more additional specific proposal,

01:57:26  23 on Mr. Bevis making what the motion called wild accusations

01:57:33  24 against someone in a 2009 complaint filed in DuPage County,

01:57:45  25 and --

01:58:02  1      So the reason I flagged this one, to even allow you

01:58:06  2  to ask about this, I am not sure how you can do that without

01:58:10  3  talking about a lawsuit, and then you have brought in the

01:58:12  4  opinion of another individual as extrinsic evidence.

01:58:23  5      So unless you can think of some other way to make the

01:58:26  6  inquiries, this line of questioning is going to be barred.

01:58:33  7      Do you see what I mean?

01:58:36  8      The underlying misconduct in the civil lawsuits I

01:58:43  9  have said you can try to ask about, like the stock --

01:58:46  10  nonexistent stock sales; but this one in particular, I am not

01:58:53  11  sure how you are going to do that without running afoul of

01:58:57  12  Rule 608.

01:59:00  13      MR. FRANKEL:  Judge, our argument would be that it is

01:59:02  14  really 404(b) here, because it shows a modis operandi or

01:59:07  15  pattern of making accusations to get out of some kind of legal

01:59:13  16  debt, responsibility, and similar to making an accusation in

01:59:19  17  this case against Mr. Dvorkin that he was solicited in this --

01:59:25  18      In the case in DuPage County, someone sued him, and

01:59:29  19  as part of that lawsuit, Bevis claimed that this guy wanted

01:59:32  20  him to put drugs on his ex-wife, which the witness person

01:59:40  21  denied during that hearing.

01:59:42  22      THE COURT:  And then he denied it.  I'm sorry.  He

01:59:45  23  didn't deny it, but he said he was under duress, right, from

01:59:49  24  the plaintiff?

01:59:50  25      MR. FRANKEL:  (Nodding head.)

01:59:52  1    THE COURT:  So -- okay.

01:59:53  2        If the questions are crafted in this way, what is the

01:59:56  3    Government's response?

01:59:59  4        MR. PERCONTE:  It is not 404(b) evidence.

02:00:03  5        THE COURT:  So the question would be:

02:00:04  6        You were sued in 2009?  Yes.  That would be the end

02:00:08  7    of the questions on the nature of the suit.  That wouldn't

02:00:13  8    call into question -- the jury wouldn't even know that the

02:00:17  9    accusation that underlied the civil complaint was -- had

02:00:23  10   anything to do with character for truthfulness.

02:00:25  11       But then the next question is:

02:00:28  12       And in that lawsuit you testified that the plaintiff

02:00:31  13   in that lawsuit asked you to plant drugs on the plaintiff's

02:00:39  14   ex-wife?  Yes, I did say that.  That was false, wasn't it?

02:00:56  15       What is wrong with that line of questioning?

02:00:58  16       MR. PERCONTE:  I think it is a wholly collateral

02:01:01  17   matter where we will get into a mini trial about -- the

02:01:05  18   assumption in asking the questions is that that wasn't true.

02:01:08  19       Right?

02:01:09  20       The reason why Mr. Frankel was asking that question,

02:01:12  21   he is classifying it as a wild accusation.  It could very well

02:01:16  22   be true.  I have no way of knowing that.  He has no way of

02:01:19  23   knowing that.  And so without any basis, I don't think there

02:01:24  24   is a good faith basis to ask the question.

02:01:26  25       I mean, there is testimony that this guy asked me to

02:01:30   1   plant drugs on him and his contention is that's false.  But we

02:01:33   2   have to prove that up in order for that question to be

02:01:36   3   relevant to his truthfulness.

02:01:38   4           So basically he is saying, you testified to this,

02:01:41   5   and, yes, I did, and I --

02:01:45   6           THE COURT:  Your Honor, here is the -- the good faith

02:01:47   7   basis is the sworn testimony of the plaintiff in that case

02:01:50   8   during the bench trial.  I never asked Bevis to plant drugs on

02:01:55   9   my ex-wife.  That is bonkers.  And then -- okay.  Then he has

02:02:00   10  a good faith basis to believe that Mr. Bevis lied when he

02:02:06   11  testified.

02:02:07   12          Now, Mr. Bevis is going to -- I don't want to

02:02:10   13  predict, but he is likely to not accept that.  But the inquiry

02:02:18   14  is, I think, permitted because it would be asking about a

02:02:23   15  specific instance of untruthfulness, and, again, they can't

02:02:32   16  introduce extrinsic evidence.  Like they couldn't bring in the

02:02:41   17  plaintiff in the case and say Mr. -- so we aren't going to

02:02:44   18  have a mini trial over that.

02:02:45   19          MR. PERCONTE:  I can see that -- it seems like

02:02:48   20  improper impeachment, really.  It is not a prior statement

02:02:52   21  relevant to this lawsuit.

02:02:55   22          Had we had, for example, a suppression hearing in

02:02:57   23  this case where Mr. Bevis testified and said something

02:03:00   24  different, then there could certainly be a question.

02:03:02   25          You know, you said at a hearing under oath, this,

right?  And now you are saying something different.  And you
can impeach him with a transcript.  I mean, that is
essentially what he is trying to do here, except it is a
totally collateral -- like you testified to this in another
case.

It is just -- there is not really a foundation for
even asking the question, I think, and I think it necessarily
refers to extrinsic evidence, which is the existence of the
other testimony.

And I think it is similar to the Court's point about
the existence of a lawsuit.

You have been sued, I think.  I am not even sure that
is an appropriate question.  What is the relevance of that?
How does that go to his truthfulness?  And in that lawsuit you
testified --

I mean, that is similar to instead of Mr. Frankel
asking Mr. Bevis, you sold a security on this date to this
person and that was unregistered, which I think the Court has
said that that is a fine question to ask, but the
inappropriate question would be, You were sued for selling
this security on a particular date, right?  I think this is
the same thing.  It is -- he is asking if he has been sued,
which is inappropriate.

He is then asking him about extrinsic testimony to
this case, where -- that has nothing to do with this case,

02:04:20  1   that has -- that is wholly -- by definition it is extrinsic,
02:04:26  2   because he is asking about --
02:04:28  3          THE COURT:  Okay.
02:04:30  4          MR. PERCONTE:  That is my concern.
02:04:31  5          THE COURT:  What the defense would not be able to do
02:04:34  6   is say, and isn't it true, after Mr. Bevis denies that he lied
02:04:39  7   about it, isn't it true that the plaintiff in that case
02:04:42  8   testified that he did not ask you to plant drugs on his
02:04:47  9   ex-wife.  That would be extrinsic evidence.
02:04:52  10         But a lot of impeachment is based on, especially
02:04:57  11  specific instances of misconduct, is based upon let's see if
02:05:01  12  the witness now under oath, you know, in Federal Court, will
02:05:06  13  own up to what -- whoever the cross-examiner is, says is a
02:05:15  14  prior instance of untruthfulness.
02:05:17  15         So the question, Weren't you sued in 2009, that does
02:05:25  16  not go to character for truthfulness, and it is not extrinsic
02:05:29  17  evidence for character for truthfulness.  That is just setting
02:05:33  18  up the next question, which is relevant, which would be, In
02:05:36  19  that case you testified that the plaintiff asked you to plant
02:05:40  20  drugs on his ex-wife?  Yes, I did.  And then, That is a lie.
02:05:47  21  And we will see what Mr. Bevis says.
02:05:49  22         But that line of inquiry under 608 does go to his
02:05:56  23  character for truthfulness, and I don't think at any part
02:06:00  24  there did the -- any part of those -- that line of
02:06:06  25  questioning, and Mr. Frankel will do it much better than I

02:06:09 1 just did it, introduce extrinsic evidence to prove up the

02:06:13 2 falsity of the statement.

02:06:15 3 MR. PERCONTE: What if he either does not recall his

02:06:19 4 testimony or he says, no, that he didn't say that under oath?

02:06:24 5 Then I am assuming Mr. Frankel will want to cross-examine him

02:06:28 6 with the transcript.

02:06:29 7 THE COURT: Then --

02:06:30 8 MR. PERCONTE: He would have to accept the answer,

02:06:33 9 then.

02:06:33 10 Right?

02:06:33 11 THE COURT: He can try to refresh his memory with the

02:06:36 12 transcript, and then the jury wouldn't see the transcript, but

02:06:39 13 he would go on from there.

02:06:40 14 That is one of the things about Rule 608, and the

02:06:44 15 ability of the examiner having access to the ability to show

02:06:49 16 and prove up the extrinsic evidence. That is why he will be

02:06:53 17 waving the transcript around, to impress upon the witness, you

02:06:56 18 know, that, I have got the goods on you, and then one hopes

02:07:02 19 that the oath also has an influence.

02:07:04 20 MR. PERCONTE: And, Judge, I think that is what I was

02:07:06 21 inartfully trying to say before. As long as he accepts the

02:07:09 22 answers on that, that is fine. But I think it would be

02:07:12 23 inappropriate for him to say, Well, sir, I am showing you this

02:07:15 24 transcript from this day, and doesn't it say here that you

02:07:19 25 said something else? I think that would be extrinsic

02:07:22    1    evidence, then.

02:07:23    2         If he were to impeach him with that transcript --

02:07:26    3         THE COURT:  That wouldn't be impeachment.  It would

02:07:29    4    be refreshing his memory.

02:07:30    5         MR. PERCONTE:  Right, as long as he doesn't try to

02:07:33    6    read from the transcript, or have the witness read from the

02:07:35    7    transcript.

02:07:36    8         If he shows it to him, pulls it back, and the witness

02:07:39    9    says, Okay, now I remember, I did testify to that.

02:07:46   10         What you can't do, my understanding, according to the

02:07:49   11    Court's ruling, is he can't show him the transcript and then

02:07:52   12    seek to admit it as like a prior inconsistent statement or

02:07:54   13    something like that, because that would be extrinsic evidence

02:07:57   14    of this entire hearing.

02:07:58   15         MR. FRANKEL:  And, Judge, in the other examples that

02:08:00   16    we have been discussing, Bevis could legitimately disagree and

02:08:07   17    say, in my view I didn't lie about the stock or commit a

02:08:10   18    fraud, and I would not be able to nail him down with anything

02:08:13   19    extrinsic.

02:08:13   20         In this case we do know that he did testify this way,

02:08:16   21    so I don't know how we can just state a lie on record and

02:08:23   22    leave that lingering notion, knowing all of this knowing is

02:08:26   23    not true and --

02:08:27   24         THE COURT:  This is what happens with Rule 608 is you

02:08:29   25    get stuck with that.

02:08:31   1        Now, as I said, the examiner is often able to impress
02:08:34   2   upon the witness that -- and, by the way, this isn't even as
02:08:38   3   to the falsity of the statement.  This is just whether he made
02:08:41   4   that statement.
02:08:41   5        MR. FRANKEL:  Right.
02:08:42   6        THE COURT:  But I know that is your point.  You are
02:08:44   7   trying to get out that he made this accusation, and -- okay.
02:08:50   8        So the -- so, we still have to rely on devices like,
02:08:59   9   Well, would it help you remember whether you said that if you
02:09:01  10   were shown a transcript, and then you can show it to him and
02:09:07  11   see if that jogs his memory.
02:09:08  12        And there is also, you know, the witness always has
02:09:12  13   concerns about prosecution making a false statement or for
02:09:15  14   committing perjury, so --
02:09:20  15        But the rule is you can't introduce extrinsic
02:09:23  16   evidence.
02:09:24  17        MR. FRANKEL:  Okay.
02:09:35  18        There was additional exhibits which I think are
02:09:43  19   covered by the general ruling.  There are apparently
02:09:47  20   additional complaints filed with the Department of Financial
02:09:54  21   and Professional Regulation from 2008 and 2010; and, again, to
02:10:02  22   the extent they go to character for truthfulness, can't be
02:10:07  23   proven by extrinsic evidence.
02:10:10  24        If you have some specific instances that underlie the
02:10:12  25   complaints, then you can ask specifically and directly about

02:10:17  1    those instances, but not in the format of, and complaints have

02:10:22  2    been filed against you.

02:10:26  3              MR. FRANKEL:  Judge, before we move on to another

02:10:28  4    motion, maybe this should be the subject of a subsequent

02:10:31  5    motion.

02:10:32  6              We -- in our interviews with some of the victims of

02:10:36  7    Bevis' fraud, they told us that Bevis bragged that he never

02:10:42  8    paid taxes; and we think that if that is true, and we don't

02:10:47  9    have any basis for knowing whether it is true or not, we would

02:10:51  10   think that that would be character evidence or 608(b)

02:10:59  11   evidence.

02:11:00  12             THE COURT:  Yeah.  You should file a motion on that,

02:11:01  13   because there is some law on the failure to pay taxes, and it

02:11:05  14   may be dependent, too, on the context of whether he filed

02:11:10  15   something and underreported or he didn't file anything at all,

02:11:13  16   which might not go to character for truthfulness.

02:11:16  17             MR. FRANKEL:  We don't have any access to his tax

02:11:19  18   records.  We were going to ask the Court to order the

02:11:22  19   Government to subpoena his tax records, and then they can be

02:11:27  20   disclosed to the Court in chambers.  We don't need to see

02:11:30  21   them, but we think that based on what we have heard, we have a

02:11:33  22   good faith basis to make that request.

02:11:35  23             THE COURT:  Okay.  So it is essentially making a

02:11:37  24   Giglio type request at this point?

02:11:40  25             MR. FRANKEL:  (Nodding head.)

02:11:41  1      THE COURT:  Are you ready to respond, or do you want
02:11:44  2   to digest that?
02:11:45  3      MR. PERCONTE:  No.  We would like to brief it.  I
02:11:48  4   heard a little bit about it yesterday afternoon.  This is the
02:11:52  5   first we heard about it.
02:11:52  6      THE COURT:  Here is what I think is the best
02:11:54  7   procedure.  I suppose you could do it verbally to the
02:11:58  8   Government, but you might want to just put in writing a
02:12:00  9   request, you believe it goes to the credibility of a witness,
02:12:06 10   and then you would assert that the Internal Revenue Service,
02:12:14 11   as part of the Department of Treasury and as part of the
02:12:16 12   Government, and so the Government ought to be under an
02:12:20 13   obligation to produce exculpatory -- not exculpatory.  Giglio
02:12:26 14   information that is in the hands of the IRS.
02:12:29 15      And the Government can digest that and respond to
02:12:34 16   you; and if you are not satisfied with the response, then you
02:12:37 17   can file a motion.
02:12:56 18      THE COURT:  Does anyone want any clarification on
02:12:59 19   that before we move on to the next motion?
02:13:01 20      MR. FRANKEL:  No.
02:13:01 21      MR. PERCONTE:  No, Judge.
02:13:02 22      THE COURT:  Next one is docket 59.  Defense motion to
02:13:06 23   permit this Alexander Kerr expert to testify.
02:13:11 24      So, in my view, the relevancy of this testimony is
02:13:15 25   completely dependent on what the other witnesses will testify

02:13:20  1   to as we have previously discussed, okay.

02:13:25  2          So if you are able to introduce evidence that meets

02:13:34  3   the standards that I set forth whereby a business associate is

02:13:40  4   able to testify, for example, as to a conversation in which

02:13:44  5   they discuss that the death of a member of an LLC does not

02:13:48  6   extinguish a debt, I think it is fair game for then an expert

02:13:54  7   to just confirm that to the jury.

02:13:58  8          As a matter of law, it is correct.  I mean, I don't

02:14:02  9   think it is incorrect.  And that would be relevant so long as

02:14:12  10  the defense has been able to introduce relevant and admissible

02:14:16  11  evidence as I have described.

02:14:19  12         This is just sort of tying up the loose end on that,

02:14:24  13  so the jury is not sitting there thinking -- you know, many of

02:14:29  14  them may have no experience with an LLC, or some of them

02:14:33  15  might, but not understand it.  And so it would make sense to

02:14:39  16  tie that up for the jury, but it is dependent on the other

02:14:42  17  witnesses.

02:14:42  18         So Mr. Kerr, you know, can't testify until after

02:14:47  19  those other witnesses testify, if they are able to testify.

02:14:55  20         Any clarification needed on that one?

02:14:57  21         MR. PERCONTE:  My understanding is as long as there

02:15:00  22  is some foundation laid by other witnesses that Mr. Dvorkin

02:15:04  23  knew this --

02:15:05  24         THE COURT:  Or believed it.

02:15:06  25         MR. PERCONTE:  -- or believed it, he can testify; but

02:15:08  1    if there is no such testimony, then he can't testify.

02:15:11  2             THE COURT:  Right.

02:15:11  3             Government's motions in limine.

02:15:23  4             Is there any objection to any of these?  The first

02:15:27  5    one, as you are looking for it, is they introduce evidence of

02:15:30  6    the defendant and the company's financial troubles.

02:15:38  7             MR. FRANKEL:  Yes, we object to that.

02:15:43  8             It is not really relevant to the issue of whether the

02:15:47  9    defendant solicited a crime of violence.  They argue that it

02:15:56  10   is relevant on motive, but motive is not an element of this

02:16:00  11   crime.  And even the jury instructions, when we look at the

02:16:03  12   jury instructions, they recommend no instruction on the issue

02:16:08  13   of motive, which is not a relevant issue.

02:16:19  14            The dire straits of Mr. Dvorkin's company is simply

02:16:23  15   not relevant, and I think by emphasizing it, they are

02:16:27  16   emphasizing something -- they are going to give a misleading

02:16:30  17   impression to the jury that the more serious his financial

02:16:33  18   trouble is, the more likely is that he had sufficient

02:16:36  19   desperation to make this solicitation.

02:16:41  20            THE COURT:  That is precisely the relevant issue, I

02:16:44  21   think, and so I think this is admissible to dirty up the

02:16:54  22   character of Mr. Dvorkin that he is a poor businessman and --

02:17:01  23            So it doesn't go to character at all, but it does go

02:17:04  24   to motive.  Even though motive is not an element of the

02:17:07  25   offense, it is certainly a relevant issue in the case, and so

02:17:13    1    the evidence of his financial troubles is admissible.

02:17:18    2         I just have two caveats.

02:17:20    3         One is, some of the evidence as proposed has to do

02:17:23    4    where court rulings on his appeal bond in State Court.

02:17:28    5         MR. PERCONTE: So, Judge, what we intend to do

02:17:31    6    essentially is put in the judgment, which will be certified

02:17:34    7    records, and the reason why those, the appeal bond is

02:17:37    8    important, is because it is happening at the same time in

02:17:40    9    April as we allege the solicitations are happening. And his

02:17:45    10    inability to post that bond is evidence that he did not have

02:17:50    11    the ability to pay this judgment, and that is why it is part

02:17:54    12    of his motive.

02:17:55    13         He references the appeal bonds in recorded

02:17:59    14    conversations with the CW.

02:18:03    15         He is saying, I have to post the bond by this date,

02:18:06    16    and it is contemporaneous, and it explains -- as the Court is

02:18:10    17    denying his appeal bonds, what is happening is the judgment is

02:18:15    18    enforceable, and that is why it is relevant.

02:18:18    19         Whether we need to actually put those in or just have

02:18:22    20    one of the attorneys, which is the next motion, just quickly

02:18:25    21    explain that process, and that is what was going on in April,

02:18:28    22    on whether he was going to be able to appeal, and that got

02:18:32    23    extinguished in early May, which is at the end of our time, is

02:18:35    24    relevant.

02:18:36    25         THE COURT: And I appreciate the relevance of the

02:18:41  1    failure to post the appeals bond, thereby extinguishing his
02:18:45  2    appeal and making the judgment final.  I do have a concern
02:18:58  3    about the jury making some kind of inference that the defense
02:19:01  4    is making requests to the State court, perhaps supported by
02:19:04  5    affidavits, and then the State Court is rejecting those
02:19:07  6    requests, and then drawing some inference that the State court
02:19:10  7    was making some kind of credibility finding against
02:19:14  8    Mr. Dvorkin.
02:19:14  9         MR. PERCONTE:  Judge, we can come up with a way, and
02:19:17  10   we can work with Mr. Frankel on that, to sanitize that and
02:19:20  11   essentially have the attorney testify that there was a process
02:19:23  12   going on whereby the defendant had to post an appeal bond, he
02:19:27  13   was unable to post that bond, which is absolutely true.
02:19:30  14        Right?
02:19:30  15        And then at the end, effectively, the judgment was
02:19:33  16   made to be enforceable at the end of that.
02:19:35  17        I think that sanitizes it so there is nothing to say
02:19:44  18   the Court rejected his affidavit.  And so we are happy to do
02:19:48  19   that.  As long as there is no objection to us not putting in
02:19:51  20   the actual certified orders, you know, from the defense, we
02:20:01  21   are happy to have the attorney gloss through it quickly.
02:20:03  22        Effectively what we want is he was trying to appeal,
02:20:06  23   he was unable to do so because he was unable to post a bond,
02:20:09  24   and then the judgment became effective in early May.
02:20:13  25        But I do think -- we want to introduce the affidavit,

02:20:18   1   which is obviously a statement of a party opponent.  We will

02:20:23   2   divorce the affidavit from the motion it is attached to, but

02:20:26   3   the importance of the affidavit is that it lays out his

02:20:29   4   financial condition, that he has limited resources, which is

02:20:38   5   obviously part of the motive.  We will get a certified copy of

02:20:43   6   that, and we will divorce it from the motion, so there is no

02:20:46   7   appearance of the court to say that the court did not believe

02:20:47   8   Mr. Dvorkin or anything like that.

02:20:48   9            Plus, I also think it is relevant to -- we have heard

02:20:52  10   today a little bit about the idea whether Mr. Dvorkin knew

02:20:55  11   about bankruptcy.  If his company is in dire straits, as he

02:21:04  12   lays out in his affidavit, and we have no reason to think he

02:21:07  13   was lying there, that undercuts the defense argument and is

02:21:11  14   relevant to the idea that if he knew so much about bankruptcy,

02:21:14  15   why hadn't he filed already.

02:21:18  16            So I think that is also relevant to that, if that

02:21:22  17   argument is made by defense.

02:21:23  18            I know I have given a long-winded answer to a very

02:21:27  19   short question, but, to summarize, we will not introduce the

02:21:29  20   orders as long as we can work something out with defense

02:21:33  21   counsel, we can report back to the Court about that, to kind

02:21:35  22   of just gloss over that period.

02:21:37  23            But we do want to introduce the affidavit because it

02:21:40  24   is relevant motive evidence of Mr. Dvorkin's own statement

02:21:44  25   regarding his financial problems and his company's financial

1   problems.

2        THE COURT:  I stated my concern, and if you can

3   confer with the defense, that would be -- the defense can

4   preserve its objection and can retreat to Line B and sanitize

5   it.  Maybe you don't have any concern and you want it all in.

6   That would be fine, too.

7        MR. FRANKEL:  I have concerns.

8        I think what is going to happen here is the jury is

9   going to -- the jury is going to believe that a person can

10   kill their way out of a legal judgment, and so they are going

11   to get that impression because the Government is going to

12   spend so much time showing that there were these legal

13   proceedings and there were appeal bonds filed and documents

14   introduced into court, lawyers are going to testify.  And I

15   just think that is misleading to the jury, especially since

16   our evidence on that issue as being sort of reined in.

17        We are going to have to make sure that we have a

18   specific conversation that Dvorkin had with someone about his

19   knowledge of whether killing someone can discharge a debt, and

20   I have real concerns about a jury not understanding about

21   these financial matters, getting the wrong impression, because

22   this is the approach the Government wants to go in talking

23   about the Dvorkin debt.

24        MR. PERCONTE:  Judge, there is evidence --

25   Mr. Dvorkin -- we have recorded statements and also his

02:23:19  1    statement to the CW, indicating what he believed.  Whether it
02:23:23  2    is legally true or not, that a person who is the head of an
02:23:27  3    LLC dies, and the LLC doesn't have -- there is no judgment due
02:23:31  4    to him anymore, is not really relevant at all.
02:23:35  5         Our point is, Mr. Dvorkin -- our argument is he
02:23:40  6    believed that, based on what he said in his conversations.
02:23:44  7    That is his belief.  True or not, it forms his motivation.  If
02:23:48  8    there is contrary competent admissible evidence that he did
02:23:52  9    not have that belief, the defense is free to introduce that,
02:23:55  10   but it is not like we are hoodwinking the jury, or seeking to
02:23:58  11   have the jury be complicit in some sort of hoodwinking of the
02:24:03  12   jury.
02:24:03  13        Our argument is that the defendant believed this, and
02:24:06  14   our basis for this is that he said it in recorded
02:24:08  15   conversations and in other confidential conversations.
02:24:13  16        The inherent correctness of that isn't relevant.  If
02:24:16  17   it becomes relevant, because the defense is able to introduce
02:24:19  18   evidence that he actually had a contrary belief.  We are happy
02:24:23  19   with either an expert testifying or them getting some judicial
02:24:26  20   notice that this wouldn't have happened, assuming this is
02:24:28  21   correct, and explaining that to the jury.
02:24:30  22        But the focus here is on Mr. Dvorkin's motive, not
02:24:35  23   the inherent correctness of his belief.  That is why people
02:24:39  24   hire attorneys, because attorneys know it a lot better than
02:24:42  25   they do.

02:24:42  1    So whether Mr. Dvorkin was right about the law, that
02:24:45  2  doesn't matter, and I don't want the Court to think that we
02:24:48  3  are trying to mislead the jury in any way.  We are just
02:24:51  4  focused on what the defendant believed.
02:24:53  5    THE COURT:  I don't have a concern that the jury is
02:24:56  6  going to be misled by the introduction of the evidence of the
02:25:04  7  company's financial troubles, as well as this appeals process
02:25:07  8  in State Court, and I don't think -- I won't allow the jury to
02:25:21  9  be misled.
02:25:22  10    All of that may become relevant if the defense is
02:25:25  11  able to admit evidence on that, but that wasn't the concern I
02:25:28  12  had.  I understand you articulated that for the record, but I
02:25:31  13  do want to avoid any inference that the State court was making
02:25:40  14  adverse liability findings against Mr. Dvorkin.
02:25:43  15    So as long as that can be satisfied, this motion is
02:25:46  16  granted.
02:25:50  17    And I will -- I will monitor as the evidence comes
02:25:53  18  in.  If you start going back years and years to debts, I will
02:25:58  19  probably announce a 403 cutoff at some point, but I don't
02:26:03  20  think that is what is going to happen.
02:26:21  21    The next point is the lawyers, Mr. Meyer's lawyer, I
02:26:25  22  guess, the obtaining of the judgment.
02:26:27  23    So what is the response?
02:26:28  24    MR. FRANKEL:  Same argument, Judge.  I don't see how
02:26:32  25  -- why it is relevant to have the lawyers testify about the

02:26:36    1    judgment.  Again, as long as they are already being allowed to
02:26:40    2    go into the judgment in the first place, putting the lawyers
02:26:44    3    on the stand, it is cumulative and not probative.
02:26:51    4             MR. PERCONTE:  Your Honor, if I can --
02:26:53    5             MR. WALLIN:  If I can piggyback on that real quickly.
02:26:56    6             Under Rule 403, it just seems like Mr. Dvorkin is
02:27:00    7    going to be punished for pursuing his civil state options.
02:27:04    8    Yes, he didn't file bankruptcy at the time, but he has filed
02:27:07    9    bankruptcy since then.  And just because he pursued his
02:27:10    10   appeals within the State Court contemporaneously doesn't -- it
02:27:17    11   is not -- it is not relevant to this situation.
02:27:22    12            MR. PERCONTE:  Judge, I think in terms of the
02:27:24    13   cumulative argument, we intend to essentially introduce the
02:27:27    14   judgment through the attorneys, and -- through the attorney,
02:27:32    15   and we also are introducing the identity of the victim through
02:27:36    16   the attorney, obviously.
02:27:39    17            He represented this person.  There was a lawsuit.  A
02:27:42    18   lawsuit ended in a judgment.  The judgment -- you know,
02:27:45    19   quickly through the fact that the defendant was unable to post
02:27:48    20   an amount with the Court equal to pay the judgment, the
02:27:52    21   judgment became effectively collectible on this date.  That is
02:27:58    22   largely what it is going to be.
02:27:59    23            And then with respect to this -- under an abundance
02:28:04    24   of caution, we have disclosed them as experts.  Essentially --
02:28:08    25   the main thing we want to get out from that is the judgment

1     says, joint and several liability.

2         I am not sure that -- frankly, there are sometimes

3     when I am not sure what joint and several liability means, so

4     I am pretty sure a jury doesn't. We would want to explain

5     what, have the lawyer quickly explain that that means all the

6     entities listed in that judgment, including Mr. Dvorkin

7     himself, are responsible for the judgment, which goes to his

8     motive.

9         And then I think there is one -- I believe there will

10     be testimony regarding a meeting between Mr. Meyer and the

11     defendant, just to show that the defendant knew who Mr. Meyer

12     was. They met in person at a mediation. That is pretty much

13     it for the attorneys.

14         We do not intend -- I understand 403 also goes to

15     jury confusion. We don't intend for this to last long, but we

16     need to identify who the victim is and why he would want to

17     target a victim a thousand miles away from him, and I think we

18     can succinctly do this through these attorneys and in a manner

19     that the court has already explained, so we are sanitizing out

20     any sort of inference that Mr. Dvorkin did anything

21     inappropriate by filing an appeal.

22         I mean, we can just blast right through that and not

23     even reference that the bond was for an appeal, that it had to

24     be posted, he was unable to post it, and we would argue that

25     that means he didn't have the money to pay the judgment, and

02:29:36  1    then the judgment became effective.

02:29:37  2          We do not plan on trying to punish Mr. Dvorkin for

02:29:42  3    trying to exercise his appeal rights at the State Court level.

02:29:46  4    We just need to tell the jury, explain to the jury, why a man

02:29:48  5    in the Chicago area would want to kill someone, seemingly

02:29:52  6    without this background knowledge of the lawsuit and the

02:29:54  7    judgment, completely unrelated to the defendant, and located

02:29:58  8    thousands of miles away.

02:29:59  9          And that is what we seek to do, and we seek to do it

02:30:00  10   very quickly and in a manner that is not -- that does not

02:30:04  11   punish or call into question Mr. Dvorkin's involvement in the

02:30:07  12   lawsuit, how it was litigated, or his desire to want to

02:30:11  13   appeal.

02:30:15  14         MR. FRANKEL:  I just have one comment on something he

02:30:17  15   said.

02:30:17  16         If they are going to testify, or have a witness

02:30:20  17   testify, that the judgment was -- created joint and several

02:30:25  18   liability, and that was the part of the motive here, shouldn't

02:30:29  19   they be required, like we are, to put on evidence that

02:30:32  20   Mr. Dvorkin understood what that meant?

02:30:37  21         THE COURT:  As I was thinking about this, there is

02:30:38  22   sort of a duality, or a potential, like an unequal application

02:30:49  23   of that requirement, but here is the difference.  Let me just

02:30:54  24   make sure, though.

02:30:54  25         So the judgment is joint and several as to corporate

02:31:00  1    entities, right, and Mr. Dvorkin individually?

02:31:05  2         MR. PERCONTE:  Right.

02:31:06  3         THE COURT:  Okay.

02:31:06  4         So the -- I think it is an easy inference to make,

02:31:10  5    that someone who has a judgment that says, you within entity

02:31:17  6    1, 2, and 3 are liable for this $8 million plus.  That is an

02:31:23  7    easy inference to make.  Whereas, I don't think it is an easy

02:31:28  8    inference, instead, it takes a leap of multiple inferences, to

02:31:34  9    say that the defendant new that extinguishing the life of a

02:31:44  10   member of an LLC means extinguishing the debt or extinguishing

02:31:49  11   the judgment.

02:31:50  12        So I appreciate the concern, but I do think there is

02:31:53  13   a difference in the inferential gap between the two.

02:32:00  14        MR. PERCONTE:  But, Judge, we will also tie that up.

02:32:03  15   I mean, there are statements that we will allege that were

02:32:08  16   made, and they are in the recordings where Mr. Dvorkin said he

02:32:11  17   was on the hook personally for this judgment.  So I think that

02:32:14  18   is a little different from the Court's concern regarding the

02:32:16  19   defendant's motion.

02:32:17  20        THE COURT:  So the motion is granted.  This aspect of

02:32:19  21   the motion is granted.  It is relevant.

02:32:22  22        I do not have a 403 concern that the jury will

02:32:26  23   somehow punish the defendant for exercising his State Court

02:32:30  24   appellate rights or trying to exercise them.  And these do go

02:32:36  25   to the heart of the issues in the case, and the heart of the

02:32:40   1   motive.

02:32:41   2         Is there any objection to precluding evidence of

02:32:45   3   potential penalties?

02:32:47   4         MR. FRANKEL:  No.

02:32:47   5         THE COURT:  That is granted.

02:32:51   6         Do you have any plans of an entrapment?

02:32:53   7         MR. PERCONTE:  No.

02:32:54   8         THE COURT:  I did not think so.

02:32:58   9         MR. FRANKEL:  No.

02:32:58   10         THE COURT:  If you come up with one.  Okay.

02:33:02   11         MR. FRANKEL:  Our investigation continues.

02:33:04   12         MR. PERCONTE:  Judge, I will note for the record we

02:33:06   13   have not received any sort of notice of any defenses that

02:33:09   14   would require notice.

02:33:11   15         THE COURT:  Yeah.  Alibi and so on, okay.

02:33:11   16         MR. PERCONTE:  I would just ask if there is going to

02:33:14   17   be -- and we have had a good working relationship with

02:33:17   18   Mr. Frankel and Mr. Wallin, I am not concerned about it, but

02:33:21   19   we would like to give notice, and we have requested, I think,

02:33:23   20   in our discovery letter at the outset of the case.

02:33:25   21         But we just want to put on the record, right now we

02:33:27   22   are aware of no defense that's would have required to have

02:33:30   23   been disclosed at this time.

02:33:31   24         THE COURT:  All right.

02:33:38   25         Now, that takes care of the motions.

02:33:40   1         On voir dire questions, I will take a closer look,

02:33:43   2 but let me ask one question about --

02:33:45   3         Both sides propose a question about gun, either

02:33:49   4 ownership, or how do you feel about gun ownership.  Now, is

02:33:53   5 that because Mr. Bevis owned a gun shop?

02:33:56   6         MR. FRANKEL:  That is why we proposed it.

02:34:00   7         MR. PERCONTE:  That is why we proposed it, as well.

02:34:02   8 Meeting of the minds.

02:34:03   9         THE COURT:  All right.  I will think about it some

02:34:04 10 more, but -- okay.

02:34:12 11         I want to try to phrase the question in a way where

02:34:15 12 we don't get into deep-seeded feelings about self-defense or

02:34:19 13 gun control.

02:34:23 14         There is no suggestion that he was doing anything

02:34:29 15 related to this gun shop, lawful gun sales.

02:34:33 16         Right?

02:34:33 17         MR. WALLIN:  So far.

02:34:35 18         THE COURT:  Right.  So -- okay.  There may be -- I

02:34:38 19 might try to craft it a bit more specific to his situation,

02:34:52 20 and I am trying to avoid asking about and eliciting real

02:34:57 21 strong feelings about owning a gun or gun control when I don't

02:35:01 22 think that is what you all are concerned about.

02:35:02 23         Right?

02:35:03 24         MR. PERCONTE:  Judge, I think our concern is that

02:35:05 25 somebody that has a strong feeling that nobody should have

02:35:09  1   guns or that guns are inherently evil, would not -- would be
02:35:13  2   predisposed not to believe the testimony of someone who sells
02:35:16  3   guns lawfully.  That is why we proposed the question.
02:35:19  4          I am fine, obviously, if the Court would like to
02:35:22  5   redraft it, but I just wanted to make the Court aware that is
02:35:25  6   our concern.
02:35:26  7          We certainly don't want to get into a 2nd Amendment
02:35:29  8   discussion during voir dire, but that is our main concern,
02:35:32  9   that a person would be predisposed to disbelieve him because
02:35:35  10  they hate gun ownership and think people who sell guns are the
02:35:37  11  devil.
02:35:37  12         THE COURT:  And there is a flip side concern, which
02:35:39  13  is that the defense might have where someone says, oh, yeah,
02:35:42  14  they are American heroes for selling guns lawfully.
02:35:45  15         MR. PERCONTE:  And I think that is probably why he
02:35:47  16  proposed that.
02:35:48  17         MR. FRANKEL:  Right.
02:35:49  18         THE COURT:  Okay.
02:35:49  19         So it may -- it may be something along -- I will try
02:35:53  20  to do this as early as possible, and you can react to it; but
02:35:55  21  it may even as specific as, you will hear testimony.  Because
02:36:00  22  there is no doubt you are calling Mr. Bevis?
02:36:03  23         MS. MCSHAIN:  Right.
02:36:03  24         MR. PERCONTE:  Right.
02:36:04  25         THE COURT:  So you will hear testimony from a witness

02:36:08　1　who, you know, owned a gun store and made lawful sales of

02:36:13　2　firearms.  And then, you know, do you have -- something like

02:36:18　3　do you have strong opinions either way, something like that.

02:36:21　4　And then hopefully that will flush it out without getting into

02:36:25　5　what I don't think has any real bearing about like ownership

02:36:30　6　of a gun and then in a home.  I will try to do that as early

02:36:33　7　as I can.

02:36:35　8　　　　　Now, in the jury instructions, what I would like to

02:36:37　9　do is set a deadline for any further responses, because I

02:36:41　10　think I got proposals from both sides, but not really a

02:36:43　11　reaction to the proposals.  I am not sure the Government will

02:36:46　12　have much of a reaction.  There was only three.  We can

02:36:50　13　probably take care of it during the trial.  But if the

02:36:53　14　defense, or either side, wants to, you know --

02:36:58　15　　　　　Well, I think you ought to review each other's

02:37:03　16　proposals, and if you want to make a substantive, you know,

02:37:08　17　response to any of the instructions, you know, file responses

02:37:15　18　to the citations that have been provided.

02:37:18　19　　　　　MR. FRANKEL:  Okay.  We haven't been through them,

02:37:20　20　the Government's, in detail.

02:37:22　21　　　　　I just want to raise that one instruction,

02:37:27　22　defendant's proposed instruction Number 3, which states, you

02:37:29　23　have heard testimony from Bevis who stated he was involved in

02:37:32　24　the commission of the offense as charged against the

02:37:34　25　defendant.  You may give his testimony such weight as you feel

02:37:38  1   it deserves, et cetera, et cetera.

02:37:40  2          The reason I proposed this early is so if we are

02:37:44  3   allowed -- if you are going to give it, we can make that part

02:37:47  4   of our opening statement.

02:37:48  5          THE COURT:  So I do think, then, the Government

02:37:53  6   should react to that in writing, and then you can react to the

02:37:59  7   other Government proposals, and then I will decide that before

02:38:02  8   the -- before openings, because that obviously does usually

02:38:07  9   apply only to cooperators, or someone who has a promise from

02:38:11  10  the Government, but there may be a valid reason to, you know,

02:38:14  11  give it in this case.

02:38:15  12         So let's set these deadlines, then.

02:38:18  13         We will make them all due on the same day, I think.

02:38:24  14         We start on the 26th, so let's do this:

02:38:44  15         August 14 for the following:  Any renewed motion to

02:39:02  16  -- well, I don't know if it is renewed.  Any motion to

02:39:05  17  introduce testimony determining defendant's knowledge or

02:39:11  18  belief as to the effect of the death of a member of an LLC,

02:39:17  19  and also the availability of bankruptcy, motion for character

02:39:26  20  on peaceful behavior in solicitation or 1958 case, any

02:39:32  21  entrapment proffer, if you come up with one at that point, and

02:39:37  22  also then responses to the other side's jury instructions.

02:39:44  23         And, obviously, I am not trying to hold the jury

02:39:47  24  instruction conference before the trial.  This is more the

02:39:49  25  substantive ones.

02:39:53    1          For the defense you should be looking at the

02:39:55    2   elements, instructions, and so on.  If there is a little

02:39:58    3   tinkering you want to do, that is not what I am looking for.

02:40:01    4   But more like, they screwed up the 373 elements, or, they

02:40:04    5   really should have this additional couple of sentences, with

02:40:07    6   citations, and all of that.

02:40:11    7          I don't -- and then any responses to any filings will

02:40:21    8   be due August 21.

02:40:28    9          Don't feel compelled to respond to the additional

02:40:31   10   filings on jury instructions.  We can talk about that during

02:40:36   11   the conference.

02:40:44   12          Anything else for today?

02:40:47   13          MR. PERCONTE:  Not from the Government, Judge.

02:40:48   14          MR. FRANKEL:  Not from the defense, Judge.

02:40:50   15          THE COURT:  I will probably pick 14, just to have two

02:40:53   16   alternates, in case we lose anyone.  I am going to do

02:40:58   17   preemptories by the book, meaning you will exercise your

02:41:04   18   preemptories against those who are going to be in the regular

02:41:08   19   jurors first, and then we will have round two on the

02:41:13   20   alternates, rather than doing them together, which the rule

02:41:16   21   does not really allow for.  It is a little bit more

02:41:19   22   convenient, but -- so we will do that in two rounds.

02:41:23   23          MR. FRANKEL:  Judge, will there be any opportunity to

02:41:25   24   ask follow-up questions by the attorneys?

02:41:28   25          THE COURT:  Not by the attorneys directly.

02:41:30  1      So I will -- we will put all the jurors, you know,

02:41:36  2  the first 16, in the box, and then we will put the overflow in

02:41:41  3  the benches there, and then I will qualify the entire pool

02:41:45  4  with the voir dire questions.

02:41:49  5      Then after qualifying the entire pool, we will take a

02:41:55  6  break.  You can do your for-cause challenges -- well,

02:41:59  7  actually, before we break for for-cause challenges, I will

02:42:02  8  bring you over to sidebar, and then you can propose whatever

02:42:05  9  questions, any follow-up questions you want.

02:42:07  10      We will finish those, and then we will break.  Then

02:42:12  11  you will exercise for-cause challenges, and then you will know

02:42:16  12  who you should exercise preemptories on.  And I won't mix them

02:42:22  13  up at the end, which I don't think is allowed by the rules

02:42:25  14  either.

02:42:27  15      MR. FRANKEL:  How many preemptories?

02:42:29  16      THE COURT:  I think it is ten and six, and then one

02:42:31  17  and one.

02:42:32  18      MR. PERCONTE:  So, Judge, it will be the 14 in the

02:42:35  19  box, and that is the jury, and we strike out of that and --

02:42:39  20      THE COURT:  No.  It will be -- I'm going to qualify

02:42:42  21  everybody first.

02:42:43  22      MR. PERCONTE:  Okay.  And then it will be a random

02:42:46  23  selection of the remaining individuals?

02:42:48  24      THE COURT:  No.  No.  It will be in sequential order.

02:42:51  25      MR. PERCONTE:  Okay.

02:42:51    1          THE COURT:  They will have already been randomized.
02:42:54    2    They are not going to be in alphabetical.  So jurors 1 through
02:42:57    3    16 in that box, and then 17 through whatever number I end up
02:43:00    4    bringing in.  They are already in a random order, but they now
02:43:04    5    have assigned juror numbers.
02:43:06    6          And then, yes, after we get rid of the for-cause,
02:43:12    7    when you exercise your preemptories, you will know -- you will
02:43:16    8    know certain jurors that you are not going to reach at all.
02:43:18    9    So I will not randomly mix them up again.  That is not -- that
02:43:23   10    is not permitted.
02:43:24   11          MR. PERCONTE:  Okay.
02:43:25   12          THE COURT:  All right.
02:43:26   13    Thank you.
02:43:27   14          MR. PERCONTE:  Thank you, Judge.
02:43:28   15          MR. FRANKEL:  Thank you.
02:43:35   16          THE COURT:  Off the record.
02:45:50   17          (Discussion held off the record.)
02:45:50   18          THE COURT:  We will continue the pre-trial conference
02:45:55   19    to Thursday, August 22, at 3:00 o'clock p.m.
           20          (Proceedings concluded.)
           21
           22
           23
           24
           25

1        C  E  R  T  I  F  I  C  A  T  E

2

3

4        I certify that the foregoing is a correct transcript

5   from the record of proceedings in the above-entitled matter.

6

7   /s/Krista Burgeson, CSR, RMR, CRR     August 14, 2013
    Federal Official Court Reporter      Date
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25