UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 12 CR 500 |
| v. | Judge Edmond E. Chang |
| DANIEL DVORKIN | |

### GOVERNMENT'S REPLY TO DEFENDANT'S SENTENCING MEMORANDUM

While not expressly stated, defendant Daniel Dvorkin appears to be seeking a sentence of time served and probation or home confinement in his sentencing memorandum (Dkt. No. 154 at 14-15). Such a sentence would utterly fail to adequately account for the factors set forth in 18 U.S.C. § 3553(a). Defendant sought to have Larry Meyer killed rather than pay the $8 million judgment. Defendant obstructed justice when he told Robert Bevis to lie and attempted to intimidate Ellie Farkas after she testified in the grand jury. Defendant managed to solicit a hit man and obstruct justice despite being in his 70s and dealing with several health issues. Defendant portrays himself as the victim and will not accept responsibility for his actions. Even now, in his Sentencing Memorandum, defendant will not even acknowledge that Larry Meyer and his family suffered as a result of defendant's actions and choices. Instead, he blames the Federal Bureau of Investigation for "terrif[ying]" the Meyer family as a result of FBI's "gross overreaction." Dkt. No. 154 at n.2. The seriousness of this offense, defendant's choices and actions, the need to instill in defendant a respect for the law, and, finally, the need to deter both this defendant and all defendants, these 3553(a) factors surely demand that defendant receive a significant and meaningful sentence. Time served and probation or home confinement will not achieve this.

The government acknowledges that defendant's age and health should be considered by the Court in deciding defendant's sentence, as well as several of defendant's positive character traits highlighted by the defense, including defendant's lack of prior criminal history and family support. But those positives, in addition to defendant's age and health, should not be to the exclusion of the other 3553(a) factors, particularly given the serious nature of this crime, defendant's conduct with respect to this crime, and that defendant chose to commit this offense in his 70s with medical issues. As such, the government seeks a sentence of no less than 11 years' imprisonment in this case, which is over ten years *below* the low end of the Guideline range of 262 to 327 months' imprisonment. Such a sentence will comprehensively account for each of the 3553(a) factors.

## ARGUMENT

### I. Defendant obstructed justice despite there being no negative impact to the investigation or case.

As stated in the government's sentencing memorandum, the Presentence Investigation Report correctly added two points to the Guideline calculation as a result of defendant's obstruction of justice. While the PSR cited only to the recorded May 11 conversation in support of this enhancement, the government also believes that defendant's attempt to intimidate long-time employee and family friend, Ellie Farkas, from telling the truth also supports the obstruction enhancement.[1] *See* Dkt. No. 151 at 4-6.

Defendant claims that the obstruction enhancement is not applicable to him. *See* Dkt. No.

---

[1] Ellie Farkas and her husband submitted a letter in support of defendant. Dkt. No. 154-001 at 30. While the letter appears to have been written by Ms. Farkas' husband, it does bear Ms. Farkas' purported signature. Notably absent from the letter is any mention of defendant's seeking Ms. Farkas assistance with locating locate Larry Meyer or defendant's asking Ms. Farkas, his longtime employee and family friend of he and his wife, "You don't want to see me go to jail, do you?"

154 at 4-6. Defendant's arguments should be rejected because they fail to account for the factual basis articulated by Probation and the government – which and not disputed by the defendant – in support of the obstruction enhancement. Specifically, defendant cites to Guideline language and case law addressing obstruction in the context of a defendant's own false statements, rather than a defendant's attempts to intimidate or influence a witness's testimony, the allegations at issue in this case.

First, defendant cites to Guideline§ 3C1.1, Application Note 4(G), one Guideline-provided example of obstructive conduct that could support the enhancement. Application Note 4(G) provides: "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." The government agrees that this example does not fit the scenario at issue here, as both the PSR and the government do not seek the obstruction enhancement as a result of material misstatements that defendant himself made to law enforcement.[2] Rather, the basis for the enhancement stems from defendant's attempts to intimidate or influence Bevis and Farkas to lie, s*ee also* Dkt. No. 151 at 4-6, conduct which falls squarely within a different example provided by the Guidelines, specifically Guideline§ 3C1.1, Application Note 4(A): "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so."

Similarly, the cases cited by defendant are also factually inapposite because they deal with factual scenarios involving a defendant's material false statements either to law enforcement or

---

[2] Defendant also states that the May 11 call was "a retelling of Bevis' *past* meeting with FBI agents, not a coaching session for future meetings." Dkt. No. 154 at 5. That is a mischaracterization of the conversation, as defendant clearly tells Bevis what to tell the agents. *See, e.g.,* Gov't Ex. 7 Tr. at 2:7 ("Tell them I was looking at guns."); *see also* Dkt. No. 147-007 (containing entire transcript); Dkt. No. 151 at 4-5.

3

under oath at trial. For example, in *United States v. Kroledge*, 201 F.3d 900, 905-08 (7th Cir. 2000), the Seventh Circuit affirmed the district court's application of the obstruction of justice enhancement relating to four defendants, based on the following: defendant Charles Kroledge's false testimony regarding the guilt of his co-conspirators; defendant Kathleen Kroledge's false testimony and false statements to investigators regarding the guilt of her co-conspirators; defendant Tony Kroledge's false testimony and false statements to investigators in which he provided a false alibi for his brother and sister-in-law; and, defendant Ethel Kroledge's false statements to investigators and instructing a witness to lie to investigators. With respect to *Kroledge*, the only factual issue similar to the instant case stems from the Seventh Circuit's analysis relating to defendant Ethel Kroledge, who, along with making false statements to investigators, also pointed investigators to a witness that Ethel had instructed to lie if approached by law enforcement. *Id.* at 907-08. However, again factually distinct from the scenario at issue here, the court's analysis focused on Ethel's own misstatements to law enforcement, which led investigators to a witness she attempted to influence. *Id.*

Further, the cases cited in *Kroledge*, and relied upon by defendant in his sentencing memorandum, all analyze application of the obstruction of justice enhancement relating to a defendant's own misstatements to law enforcement and the materiality of those statements. *See United States v. Wells*, 154 F.3d 412, 414-15 (7th Cir. 1998) (affirming district court's application of obstruction of justice where defendant lied about whereabouts of money he stole from bank); *United States v. Barnett*, 939 F.3d 405, 407 (7th Cir. 1991) (reversing district court's application of two-level increase for obstruction where defendant's only pretrial misstatement was that he denied committing the offenses about which he was questioned). Again, defendant is attempting to defeat the obstruction of justice enhancement here based on cases that are factually distinct.

The crux of defendant's argument appears to be language from *Wells*, in which the Seventh Circuit wrote (again, in the factually-distinct context of a defendant's own statements to law enforcement) that "it is true that an attempt at obstruction of justice that has no consequence (suppose that he had told the police that he had swallowed the money) is not a permissible basis for an obstruction of justice enhancement." *Wells*, 154 F.3d at 414. While that might apply with respect to a defendant's statements to law enforcement that are outlandish and result in no further steps by law enforcement, a different scenario is at issue here *and* the Guidelines clearly contemplate that an attempt (thus, having no consequence) to obstruct, and specifically an attempt to influence or intimidate another witness, is sufficient to apply the obstruction enhancement. Indeed, "attempt" appears in the language of the guideline itself, as well as several of the listed examples in the commentary to the obstruction guideline. *See* Guideline § 3C1.1 ("If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, . . ."); *see, e.g.,* Guideline § 3C1.1, Application Note 4(A).

The Seventh Circuit acknowledged the same in *United States v. Chuychula*, -- F.3d --, 2014 WL 2964597, at *5 (7th Cir. July 2, 2014). In *Chuychula*, the Seventh Circuit affirmed the district court's application of the obstruction enhancement based on defendant's false statements in the grand jury. The Court cited to the same language in *Wells* relied on by defendant in his sentence memorandum, and then qualified (again, in the context of a defendant's own false statements and the materiality standard) that "a statement need only '*tend* to influence or affect the issue under determination' to be material, U.S.S.G. § 3C1.1, cmt. 6 (emphasis added); the statement need not have any influence or effect." *Chuychula*, -- F.3d --, 2014 WL 2964597, at *5. The Seventh Circuit further clarified that the enhancement was appropriate in *Chychula* even though the defendant's false testimony in the grand jury did not impact defendant's apprehension,

5

conviction, or sentencing because "the enhancement is applicable not only when a defendant actually obstructed or impeded the administration of justice, but also when a defendant *attempted* to do so. The fact that Chychula's attempts to deceive the grand jury ultimately failed is of no moment." *Chuychula*, -- F.3d --, 2014 WL 2964597, at *5 (emphasis in original).

Moreover, the Seventh Circuit has found that the obstruction enhancement was applicable in several cases where a defendant attempted to influence or intimidate a witness without addressing whether the defendant's efforts ultimately were successful. *See, e.g., United States v. Strode*, 552 F.3d 630, 635 (7th Cir. 2009); *United States v. Robinson*, 14 F.3d 1200, 1203-04 (7th Cir. 1994); *United States v. Cherif*, 943 F.2d 692, 703 (7th Cir. 1991). Indeed, in *Strode*, the conversation upon which the obstruction enhancement was based was consensually recorded by a cooperating witness, whose testimony was impossible to influence because of the witness' ongoing cooperation with the government. *Strode*, 14 F.3d at 632. Thus, here, even though defendant's attempts to intimidate and influence Bevis and Farkas were unsuccessful, defendant's conduct is sufficient to support the obstruction enhancement.

**II. While defendant's age and health should be accounted for by the Court in its sentence, they do not equate to a free pass for soliciting a murder-for-hire.**

In his sentencing memorandum, defendant asserts that the government's recommendation of at least 11 years' imprisonment amounts to a *de facto* life sentence given defendant's current age of 76 and, per the 2012 U.S. Census Bureau Statistical Abstract Table, defendant has an average life expectancy of approximately 9.5 more years to live. See Dkt. No. 154 at 9. The government agrees that defendant's age and health are appropriate factors for this Court to consider in sentencing defendant. However, his age and health do not equate to a free pass, which is basically defendant's position given that he is seeking time served.

The defendant relies on *United States v. Johnson*, 685 F.3d 660, 662 (7th Cir. 2012), for his reliance on the life expectancy tables. And, again, the government agrees that defendant's life expectancy should be one factor considered by the Court, which was the court's point in *Johnson*. Specifically, in that case the Seventh Circuit affirmed the district court's sentence of 78 months' imprisonment, the low end of the applicable Guideline range, despite defendant's age of 70 years at the time of sentencing. With respect to what role tables of life expectancy should play at sentencing, the court emphasized that the tables are instructive but not exact, and that a sentence that is a term of years but is likely to be a "de fact life sentence because of the defendant's age is improper if the statue under which he was convicted provides that only a jury can authorize a life sentence." *Id.* at 663. However, the court also noted other factors that should be considered when sentencing an older defendant, including that while a defendant's propensity to commit crime declines with age, the defendant's age at the time of the crime, and the rationale that a longer term of imprisonment should have a greater deterrent effect, were additional factors to consider. *Id.* ("The 70-year –old criminal is a *rara avis*, and by engaging in criminal activity at such an age provides evidence that he may be one of the few oldsters who will continue to engage in criminal activity until they drop."). The court concluded that Johnson's sentence of 78 months, within the life expectancy table's range of 12.4 years, did not constitute a *de facto* life sentence, but that even "if it did, it would just be one more consideration that the judge might be asked to weigh in determining the sentence, properly so if the prospect of dying in prison is thought to make a sentence of otherwise appropriate length harsher." *Id.*

More recently, the Seventh Circuit addressed the issue of *de facto* life sentences in *United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014), and underscored the analysis in *Johnson* with respect to age being just one factor that a sentencing court should consider. In *Volpendesto*,

7

defendant Michael Sarno was age 54 at the time the district court sentenced him to 25 years' imprisonment. *Id.* at 299. On appeal, Sarno argued that, due to his health issues, the sentence amounted to an impermissible *de facto* life sentence even though his projected release date fell within his life expectancy. With respect to the role of life expectancy tables, the court stated that it has "never held that a sentencing court must check certain boxes in order to justify an effective life sentence." *Id.* The appellate court found Sarno's sentence to be reasonable given the district court's consideration of defendant's risk of recidivism and need for general deterrence. *Id.*

Here, the government seeks a term of imprisonment of at least 11 years, which is nearly half off the low end of defendant's Guideline range. With good time and credit for time served, if the defendant is sentenced to 11 years in prison, his projected release date will be in approximately 8.35 years (approximately 100.2 months). That falls within the life expectancy table relied upon by defendant, as well as defendant's own estimation. *See* Dkt. Nos. 154 at 9 (citing life expectancy to be 9.5 years given defendant's current age of 76); Dkt. No. 154-002 (citing life expectancy of 75 year-old to be 10.6 years).

However, even if a sentence of 11 years' imprisonment did constitute a *de facto* life sentence, such a sentence is reasonable considering all of the 3553(a) factors – the seriousness of this offense (namely, that defendant solicited the murder of another human being), the toll the offense has taken on victim Larry Meyer and his family, defendant's calculated and cold conduct in committing the solicitation at the age of 74 while suffering from poor health, his efforts to obstruct (again, despite his age and medical conditions), his obstruction efforts, his refusal to accept responsibility for his actions, and the need for both general and specific deterrence. *See, e.g., Volpendesto,* 746 F.3d at 67-68 (affirming district court's sentence of 60 years for 44-year old defendant Mark Polchan given the seriousness of the offense, and the need to protect the public

and promote general deterrence); *United States v. Chapman*, 694 F.3d 908, 916 (7th Cir. 2012) (affirming lower court sentence of 40 years for 54-year old defendant given gravity of the crime and need to deter others as well as the defendant: "Yet a sentence within a properly calculated guidelines range, like Chapman's, is presumptively reasonable, and that presumption holds true even when a sentence to a term of years will effectively result in life imprisonment."); *United States v. Kincannon*, 567 F.3d 893, 901 (7th Cir. 2009) (affirming district court's sentence of 30 years' imprisonment for 77-year old defendant where the district court noted that his age "had not deterred or slowed his criminal activity to date"); *United States v .Wurzinger*, 467 F.3d 649, 652-53(7th Cir. 2006) (affirming a 262 month sentence for 54-year old defendant given district court's consideration of all of the 3553(a) factors, including need for punishment, deterrence, and defendant's age at the time of the crime).

## Conclusion

The government acknowledges that defendant has factors that may weigh in his favor, including his lack of criminal history, and the generosity and family support highlighted in his sentencing memorandum. Dkt. No. 10-14.[3] But those positive factors, even when combined with his age and health, should not, and do not, outweigh the fact that defendant has been convicted of soliciting a murder. The government's recommendation of a sentence of no less than 11 years' imprisonment, more than 10 years below the low end of the Guideline range, is reasonable because it will comprehensively account for all of the 3553(a) factors, including the

---

[3] Defendant's charitable generosity cuts both ways, as defendant was apparently donating money prior to and after Dvorkin Holdings LLC filed for bankruptcy. *See generally In re Dvorkin Holdings, LLC*, 12-31336 (N.D. Ill.) (petition filed on August 7, 2012); *see also In re Dvorkin Holdings, LLC*, 12-31336 (N.D. Ill.) at Dkt. No. 55 (referring to adversary proceeding 12-31336, alleging that Dvorkin caused Dvorkin Holdings to make $5 million in fraudulent loans to hide assets from creditors); *In re Dvorkin Holdings, LLC*, 12-31336 (N.D. Ill.) at Dkt. No. 258 (regarding adversary proceeding 13-00686, alleging that Dvorkin and his wife fraudulently channeled money from Dvorkin Holdings to pay their daughter's health insurance and caused Dvorking Holdings to charge their daughter sub-market rent).

nature and seriousness of the crime, the defendant's choices and conduct, and the need to deter and promote respect for the law.

Dated: July 29, 2014                     Respectfully submitted,

                                                          ZACHARY T. FARDON
                                                          United States Attorney

By:    */s/ Heather K. McShain*
        HEATHER K. McSHAIN
        JEFFREY D. PERCONTE
        Assistant United States Attorneys
        United States Attorney's Office
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 353-1414

**CERTIFICATE OF SERVICE**

The undersigned Assistant United States Attorney hereby certifies that, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electric Case Filing (ECF), the Government's Reply to Defendant's Sentencing Memorandum was served on defense counsel pursuant to the District Court's ECF system, on July 29, 2014.

By: /s/ *Heather K. McShain*
    HEATHER K. McSHAIN
    Assistant United States Attorney
    219 S. Dearborn Street
    Chicago, Illinois 60604
    (312) 353-1414