**U**NITED **S**TATES **D**ISTRICT **C**OURT
**F**OR THE **N**ORTHERN **D**ISTRICT OF **I**LLINOIS
**E**ASTERN **D**IVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 CR 0500 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| DANIEL DVORKIN, | ) | |
| | ) | |
| Defendant. | ) | |

**O**RDER

In this case, the jury convicted Defendant Daniel Dvorkin of one count of soliciting a crime of violence, 18 U.S.C. § 373, and five counts of using interstate-commerce facilities in the commission of murder-for-hire, 18 U.S.C. § 1958(a). The target of the alleged murder-for-hire was Larry Meyer. Larry Meyer controlled a limited liability company, Texas 1845 LLC, to which Dvorkin (individually) and two of Dvorkin's companies owed over $8 million. Dvorkin moves for a Rule 29 acquittal and a Rule 33 new trial.

### I. Intent / Renunciation

#### A.

On the acquittal motion, the evidence must be viewed in the light most favorable to the guilty verdicts, and the question is whether the jury could rationally find Dvorkin guilty when the evidence is viewed through that lens. The answer is yes. The evidence included recorded conversations between Dvorkin and Robert Bevis, who was a commercial tenant of Dvorkin's and was, unbeknownst to Dvorkin, cooperating with law enforcement. Dvorkin first argues that the evidence did not show that he actually solicited Bevis to hire someone to murder Larry Meyer. Instead, Dvorkin contends, the evidence showed at most that Dvorkin merely fantasized about the murder, and that it falls short of the required strongly corroborative circumstances of intent for the crime to be carried out.

The problem with this argument is that it fails to genuinely view the evidence in the light most favorable to the guilty verdict. Although Dvorkin emphasizes that no firm deal with Bevis was reached, an agreement (even an "agreement" in the sense of Dvorkin believing there was one, because of course Bevis was an FBI-cooperator) is not required to show strongly corroborative circumstances of a solicitation. Nor is the absence of an agreement so telling here that the evidence of intent was insufficient. It is more than enough that: it was Dvorkin who approached Bevis to get Larry Meyer to "stop breathing"; Dvorkin instructed his assistant, Ellie Farkas, to track down Larry Meyer's location, synagogue, and photograph; Dvorkin had collected thousands of dollars in untraceable cash for the hit; and Dvorkin who wanted Bevis to keep Bevis's (purported) hit man on hold and available while Dvorkin pursued another hit man for a lower price. What's more, Dvorkin then displayed consciousness of guilt by concocting a false story for Bevis to tell the FBI as the subject matter of Dvorkin and Bevis's recent conversations. This evidence of *Dvorkin*'s enlistment of Bevis's help in the murder-for-hire readily distinguishes this case from the precedent cited by the defendant, *United States v. Rahman*, 34 F.3d 1331, 1339 (7th Cir. 1994). That case was based on evidence that showed that the defendant there wanted to collect on his debt and did *not* want the debtor to be hurt, yet an undercover agent prodded the defendant into a violent plan. Here, the defense made the argument that the evidence showed, at most, just talk, but the jury rationally rejected it in light of the initiative shown by Dvorkin in starting and continuing the plan.

### B.

Dvorkin also argues that, even if Dvorkin formed the criminal intent necessary for solicitation, he renounced the solicitation. As a legal matter, Dvorkin relies on a statutory affirmative-defense provision, which says that "[i]t is an affirmative defense to a prosecution under this section [the murder-for-hire section] that, under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant prevented the commission of the crime solicited." 18 U.S.C. § 373(b). The statute requires the defendant to bear the burden of proving renunciation by a preponderance of the evidence. As a factual matter, Dvorkin relies on the May 11, 2012 recorded conversation with Bevis, in which Dvorkin says that he now will fight the debt using legal means. The flaw in this argument is that the purported renunciation came four days after the FBI confronted Dvorkin about the murder plot on May 7. Remember that the statute requires, for a successful affirmative defense, that the renunciation be "voluntary." A post-confrontation renunciation is not, in any sense of the word, "voluntary." The May 11 renunciation

2

was not the product of Dvorkin's voluntary choice to stop the murder plot. And because Dvorkin bears the burden of proof on this affirmative defense, it is appropriate to ask: what changed between May 7 (when Dvorkin still wanted Bevis to keep the hitman available) and May 11 (when Dvorkin said he wanted to proceed solely in lawful ways)? The only relevant change was the FBI confrontation. Whether Dvorkin entirely waived or merely forfeited the affirmative defense does not matter: viewed in the light most favorable to the guilty verdict, there was no voluntary renunciation.

Relatedly, Dvorkin's ineffective-assistance argument premised on renunciation also fails. To succeed on an ineffective-assistance claim (which is virtually never successful without adding to the post-conviction record in some way), Dvorkin must show deficient performance and prejudice arising from the deficiency. On the prejudice element, now setting aside the light-most-favorable lens, still there would have been no reasonable probability of success for the affirmative defense. The jury would not have found that the renunciation was "voluntary," because the renunciation was caused by the FBI's confrontation to Dvorkin. On the performance element, it was more than reasonable for trial counsel to adopt the strategy of arguing that Dvorkin never formed the solicitation intent at all, and avoid the back-up argument of renunciation. (Because there is no post-conviction record evidence rebutting the apparent trial tactic, this is the only way to interpret the defense strategy; this is why ineffective-assistance claims are almost always reserved for a 28 U.S.C. § 2255 challenge.) Presenting an "even-if" argument to the jury on the issue of murderous intent is a delicate line to walk, and defense counsel reasonably did not pursue it.

On the murder-for-hire convictions under 18 U.S.C. § 1958, Dvorkin argues that the evidence did not show an agreement to pay consideration for a murder. It is true that, in order to sustain a conviction for murder-for hire, the evidence must show a promise of consideration, that is, "a bargained-for exchange of something of value." *United States v. Richeson*, 338 F.3d 653, 657 (7th Cir. 2003). As Dvorkin concedes, however, § 1958 "does not import all of contract law." *Id.* (quotation omitted). As *Richeson* itself shows, although the evidence must show a promise to pay in exchange for the murder, the promised consideration need not be so precise in its terms that it would withstand the civil-law definition of contract. The defendant in *Richeson* did not specify the precise amount of money that he would pay, nor did he specify the guns that would also form part of the consideration. *Id.* at 658-59. Yet that was sufficient to meet the statute's requirement. Here too, Dvorkin did promise to pay for a murder-for-hire. He and Bevis did not arrive at a

3

final *agreement* for a final amount, but Dvorkin did, on May 7, authorize Bevis to offer $20,000 for the hit. In any event, the statute requires only "a promise or agreement to pay," so a promise to pay is sufficient; an agreement is not required. Viewed in the light most favorable to the guilty verdicts, the jury rationally found Dvorkin guilty of the murder-for-hire charges.

## II. The Second Hitman

As an alternative argument, Dvorkin argues that a new trial is justified under Rule 33 because the government in some way prevented Dvorkin from pursuing the argument that there really was no second hitman, despite Dvorkin telling Bevis that Dvorkin had agreed to pay a second hitman a lower price to kill Larry Meyer. This argument is off-mark because Dvorkin's trial counsel *did* argue to the jury that there was no evidence of the second hitman. The argument was made in closing argument, and indeed the jury had not heard evidence of the second hitman. Yet the jury rejected the argument that the lack of evidence of the second hitman should result in acquittal. Dvorkin now argues that, but for the government's alleged trial tactics, he would have made the argument in some more explicit way, but he does not actually specify how.

Indeed, the second-hitman issue worked out in the best possible way for Dvorkin. The genesis of the issue was a pretrial ruling in Dvorkin's favor, when the Court held that the government could not present "Individual B" (the moniker of the other hitman (or the arranger of the other hitman) as the basis for conviction, because the charges did not accuse Dvorkin of that potential crime. Then, in opening statements, came defense counsel's argument that the government had the resources to look for the purported second hitman, but found nothing. From the Court's observations and subsequent discussion of the issue, it was plain that the reference was a genuine surprise to government counsel (which explains why the government was put on-the-spot to give an extemporaneous summary of the FBI's investigation of Individual B). In any event, there is no record evidence that the FBI investigation was a campaign of intimidation against someone whom the agents knew to be innocent. Instead, there is circumstantial evidence that Individual B was the person to whom Dvorkin referred in the conversations with Bevis: the phone records and the surveilled meeting with Individual B at least places the two together at the relevant time. The government's reliance on the invocation of the Fifth Amendment would not have been admissible to suggest guilt (and the jury would have been so instructed), but instead explains why the FBI could not further follow that line of inquiry by interviewing the suspect. As it so happened, Dvorkin

4

still argued during his closing argument that there was no evidence of the second hitman, using the fact that the government had not introduced evidence of the investigation. In light of these circumstances, there is no basis under Rule 33 for a new trial.

The motion for acquittal and for new trial [145] is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 3, 2014